**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

In re:                                          )
                                                )
THOMASEN R. INGERSOLL and                       )    Bankruptcy Case No.
KELLI A. INGERSOLL                              )    21-50191
                                                )
                Debtors.                        )

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

COME NOW Independent Farmers Bank ("IFB"), by and through its counsel of record,

and moves this Court for an Order terminating the automatic stay to permit IFB to foreclose its

liens on the Collateral as set forth below.  IFB also requests that, in the event that stay relief is

granted, this Court waive the 14-day stay requirement pursuant to Fed. R. Bankr. P. 4001(a)(3).

In support of this motion, IFB states as follows:

**BACKGROUND**

1.      IFB is a secured creditor of Debtors Thomasen R. Ingersoll and Kelli A. Ingersoll

("Debtors").

2.      IFB has recorded deeds of trust in two parcels of property owned by the Debtors

which are located at 487 E Emma Street, Osborn, Missouri 64474 ("Emma Property") and 3004

Burnside Avenue, St. Joseph, Missouri 64505 ("Burnside Property")

3.      IFB also has a perfected security interest in a 2013 Jeep with VIN

1C4RJFAG0DC548622 ("Vehicle") which is currently in the possession of the Debtors.

4.      The Emma Property, Burnside Property and the Vehicle are collectively referred

to hereinafter as the "Collateral."

5.      IFB previously timely filed proofs of claim which included copies of its

underlying loan documents and liens in the Collateral.  Copies of those filed proofs of claim

HB: 4859-3798-7620.2

(including the underlying loan documents) are included herewith as Exhibits 1, 2 and 3.

6.      The amounts owed under the respective loans at the time of the bankruptcy filing were as follows:

    a.  Emma Property – $175,373.07 (Exhibit 1, Proof Claim No. 5)
    b.  Burnside Property– $64,083.19 (Exhibit 2, Proof of Claim No. 6)
    c.  Vehicle – $12,35956 (Exhibit 3, Proof of Claim No. 8)

7.      To date, the Debtors have not liquidated any of the Collateral which secures IFB's liens.  Rather, the Debtors remain in possession of the Collateral.

8.      On May 10, 2022, this Court entered its *Order Confirming Chapter 13 Plan as Filed or Amended on or about 3/17/22* ("Confirmation Order") which confirmed the Debtors' amended Chapter 13 plan which had been filed on March 17, 2022 (Doc. No. 109).

9.      The Debtors' amended Chapter 13 Plan recognizes IFB's secured claims in the Collateral.  *See* Doc. No. 109, Parts 3.1, 3.2 and 7.

10.      On May 16, 2022, IFB sent a *Request for Proof of Insurance* (a copy of which is included herewith as Exhibit 4) to the Debtors seeking proof that they have insured the Collateral.

11.      Despite follow-up efforts with Debtors' counsel, the Debtors have still not provided any proof of insurance on IFB's Collateral.

12.      Based on the Debtors' lack of response IFB can only assume that the Debtors do not have insurance on the Collateral which names IFB as loss payee.

## ARGUMENTS AND AUTHORITIES

13.      IFB respectfully requests that the automatic stay be lifted to allow IFB to foreclose its liens on the Collateral and that it be permitted to exercise any and all rights and pursue any and all remedies in connection with same.

HB: 4859-3798-7620.2

14.     Section 362 of the Bankruptcy Code provides in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest

11 U.S.C. § 362(d)(1).

15.     The Eighth Circuit has noted that a "prima facie case [for stay relief] may be established by showing the debtor lacks equity in the property, the value of the property is declining, the property is not adequately maintained, property taxes are not being paid, *insurance coverage is inadequate*, or other facts evidencing a lack of adequate protection." *Minn-Kota Farm Agency, Inc. v. Home Fed. Sav. & Loan Ass'n*, 978 F.2d 1264 (8th Cir. 1992) (Table Decision) (emphasis added).

16.     Pursuant to Bankr. W.D. Mo. Local Rule 4070-1.B, failure to provide proof of insurance presumes no insurance is in effect.  Moreover, to the extent that the Vehicle is currently uninsured, IFB specifically directs Debtors' attention to the Western District of Missouri Local Bankruptcy Rule 4070-1.D which provides that the Debtor is enjoined from using the vehicle so long as it is uninsured.

17.     Cause exists under 11 U.S.C. § 362(d)(1) for stay relief because Debtors' failure to provide proof of insurance creates a presumption that no insurance is in place.  Furthermore, inadequate insurance (or complete lack of insurance) is grounds for stay relief because the Debtors are failing to properly preserve and protect IFB's Collateral.  As such, this Court should grant relief from the automatic stay.

## **Request for Relief from Rule 4001(a)(3)**

18.     In the event that this Court grants stay relief, IFB respectfully requests that the

Court waive the 14-day stay of Fed. Rule. Bankr. P. 4001(a)(3) with respect to any order granting stay relief to IFB.

**REQUEST FOR RELIEF**

WHEREFORE, IFB respectfully requests that this Court: (1) grant this Motion; (2) render an Order terminating the automatic stay in favor of IFB and permit IFB to foreclose its liens on the Collateral and exercise any and all rights and remedies at law or in equity to which it may be entitled as set forth herein; (3) waive the 14-day stay requirement pursuant to Fed. R. Bankr. P. 4001(a)(3); and (4) grant IFB such other and further relief at law or in equity to which IFB may be entitled.

Dated: June 13, 2022

Respectfully submitted,

HUSCH BLACKWELL LLP

By:/s/ *Michael D. Fielding*
    Michael D. Fielding, MO Bar #53124
    4801 Main Street, Suite 1000
    Kansas City, MO 64112
    Telephone: 816-983-8000
    Facsimile: 816-983-8080
    michael.fielding@huschblackwell.com

HB: 4859-3798-7620.2

## CERTIFICATE OF SERVICE

   I hereby certify that on June 13, 2022, the *Motion for Relief from Automatic Stay* was filed electronically using CM/ECF and a true and correct copy of the above and foregoing was served as follows:

  X  Upon filing, the CM/ECF system sent notification to Debtor(s) counsel and all parties participating in the CM/ECF system in this matter as follows:

- **Ryan A. Blay** bankruptcy@wagonergroup.com, blay@wagonergroup.com;bankruptcy@wagonergroup.com;blayrr52985@notify.bestcase.com;wmlecf@gmail.com
- **Richard Fink** ecfincdocs@WDMO13.com

  X  To the Office of the United States Trustee via e-mail at ustpregion13.kc.ecf@usdoj.gov.

  _____  Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as set forth within the matrix on file with the Clerk.

  X  Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as follows:

Capital one Auto Finance, a division of Capital One
N.A., c/o AIS Portfolio Services, LP
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK  73118

Thomasen R. Ingersoll and Kelli A. Ingersoll
487 East Emma Street
Osborn, MO 64474

       By:*/s/ Michael D. Fielding*
         Michael D. Fielding, MO Bar #53124

HB: 4859-3798-7620.2

EXHIBIT 1

| Fill in this information to identify the case: |
|---|

Debtor 1 _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number _____

## Official Form 410

# Proof of Claim                    AMENDED                                    04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**

_____
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor  _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| _____<br>Name | _____<br>Name |
| _____<br>Number        Street | _____<br>Number        Street |
| _____<br>City              State        ZIP Code | _____<br>City              State        ZIP Code |
| Contact phone  _____ | Contact phone  _____ |
| Contact email  _____ | Contact email  _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☐ Yes.  Claim number on court claims registry (if known) _____        Filed on _____
                                                                        MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes.  Who made the earlier filing? _____

4814-4108-9267

Official Form 410                                **Proof of Claim**                                page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

❑ No

❑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____. **Does this amount include interest or other charges?**

❑ No

❑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

❑ No

❑ Yes. The claim is secured by a lien on property.

**Nature of property:**

❑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

❑ Motor vehicle

❑ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

❑ Fixed

❑ Variable

**10. Is this claim based on a lease?**

❑ No

❑ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

❑ No

❑ Yes. Identify the property: _____

4814-4108-9267

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☐ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.   $_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   _____
                   MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name    _____
        First name            Middle name            Last name

Title   _____

Company _____
        Identify the corporate servicer as the company if the authorized agent is a servicer.

Address _____
        Number        Street

        _____
        City                              State      ZIP Code

Contact phone   _____   Email   _____

4814-4108-9267

# Mortgage Proof of Claim Attachment

(12/15)

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|
| Case number: 21-50191-btf13 | Principal balance: $140,607.23 | Principal & interest due: $41,965.84 | Principal & interest: $943.76 |
| Debtor 1: Thomasen R. Ingersoll | Interest due: $ 33,371.11 | Prepetition fees due: | Monthly escrow: |
| Debtor 2: Kelli A. Ingersoll | Fees, costs due: $ 1,394.73 | Escrow deficiency for funds advanced: | Private mortgage insurance: |
| Last 4 digits to identify: 5 0 8 3 | Escrow deficiency for funds advanced: | Projected escrow shortage: | Total monthly payment: $943.76 |
| Creditor: Independent Farmers Bank | Less total funds on hand: − | Less funds on hand: − | |
| Servicer: | Total debt: $175,373.07 | Total prepetition arrearage: $41,965.84 | |
| Fixed accrual/daily simple interest/other: | | | |

## Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

Official Form 410A          **Mortgage Proof of Claim Attachment**          page **1** of __

# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: _____

Debtor 1: _____

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

Official Form 410A **Mortgage Proof of Claim Attachment** page __ of __

## <u>SUMMARY OF EXHIBITS</u>

The following exhibits in reference to the Proof of Claim filed on behalf of Independent

Farmers Bank are available at the law firm of Husch Blackwell LLP, 4801 Main Street, Suite

1000, Kansas City, Missouri  64112, upon request:

**Exhibit A**     Summary of Proof of Claim, filed with the Proof of Claim

**Exhibit B**     Consumer Note and Deed of Trust

Respectfully submitted,

HUSCH BLACKWELL LLP

By:     */s/ Michael D. Fielding*
Michael D. Fielding, MO #53124
4801 Main Street, Suite 1000
Kansas City, MO  64112
Office: (816) 983-8000
Facsimile:  (816) 983-8080
michael.fielding@huschblackwell.com

ATTORNEYS FOR INDEPENDENT
FARMERS BANK

540261-4 (5083)
4830-7880-7793

## EXHIBIT "A"

## SUMMARY OF PROOF OF CLAIM

On or about July 22, 2016, Thomas R. Ingersoll and Kelli A. Ingersoll (the "Debtors") and Carol J. Caw ("Caw") executed a Consumer Note in favor of Independent Farmers Bank ("IFB") in the original principal amount of $153,200.00 (the "Note").  Carol Caw, a joint owner of the real estate Collateral (whose legal description is set forth below) and co-signor to the Note, died on March 25, 2021.  To the best of IFB's knowledge, information and belief, the Collateral was *not* owned by the parties as tenants with right of survivorship.  Accordingly, upon the passing of her death an undivided one-third (1/3) interest in the Collateral passed to Carol Caw's estate.  A copy of the Note is attached hereto as a part of Exhibit "B" and incorporated by reference herein.

In order to secure payment and performance of the Note, the Debtors and Caw pledged certain collateral to IFB including, without limitation, real property located in Osborn, DeKalb County, Missouri, located at 487 E. Emma Street, Osborn, Missouri 64474 and legally described as follows:

> TRACT A:  ALL THAT PART OF BLOCK SEVENTY-SIX (76), IN THE ORIGINAL TOWN, NOW CITY OF OSBORN, DEKALB COUNTY, MISSOURI DESCRIBED AS FOLLOWS:  BEGINNING AT THE SOUTHEAST CORNER OF SAID BLOCK SEVENTY-SIX (76), THENCE NORTH 195 FEET, THENCE WEST 150 FEET, THENCE SOUTH 195 FEET, THENCE EAST 150 FEET TO THE PLACE OF BEGINNING.

> TRACT B:  THAT PART OF BLOCK SEVENTY-SIX (76), IN THE CITY OF OSBORN, DEKALB COUNTY, MISSOUR, DESCRIBED AS COMMENCING AT THE SOUTHWEST CORNER OF SAID BLOCK SEVENTY-SIX (76); THENCE EAST WITH THE SOUTH LINE OF SAID BLOCK SEVENTY-SIX (76); 175 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH ONE HUNDRED NINETY-FIVE (195) FEET; THENCE WEST TO THE CENTERLINE OF CREEK; THENCE SOUTHERLY ALONG THE

540261-4 (#5083)
4830-7880-7793

CENTERLINE OF SAID CREEK TO SOUTH LINE OF SAID BLOCK SEVENTY-SIX (76); THENCE EAST, TO THE TRUE POINT OF BEGINNING, ALSO PARTY OF BLOCK SEVENTY-SIX (76), IN THE ORIGINAL TOWN OF OSBORN, DEKALB COUNTY, MISSOURI, DESCRIBED AS FOLLOWS: BEGINNING 93 FEET EAST OF THE NORTHWEST CORNER OF SAID BLOCK SEVENTY-SIX (76); THENCE EAST 232 FEET TO THE NORTHEAST CORNER OF SAID BLOCK SEVENTY-SIX (76); THENCE SOUTH 130 FEET; THENCE WEST TO THE CENTERLINE OF THE CREEK; THENCE SOUTH ALONG THE CENTERLINE OF SAID CREEK 3 FEET; THENCE WEST TO A POINT THAT IS 93 FEET EAST OF THE WEST LINE OF SAID BLOCK SEVENTY-SIX (76); THENCE NORTH 133 FEET TO THE POINT OF BEGINNING.

(the "Collateral"). A copy of the Deed of Trust evidencing the claim of IFB in the collateral is attached hereto as a part of "Exhibit B" and incorporated herein by reference.

**SECURED CLAIM**

IFB hereby demands payment of its secured claim which as of July 7, 2021, was in the total amount of $175,373.07 consisting of: principal of $140,607.23; plus interest in the amount of $33,371.11; plus late fees in the amount of $1,394.73; plus all other costs, attorney's fees, expenses, charges and other amounts due pursuant to the loan documents between the Debtors, Caw and IFB.

**RESERVATION OF RIGHTS**

IFB hereby reserves the right to alter, amend, supplement, modify and/or withdraw this Proof of Claim at any and all times.

The submission of this Proof of Claim is subject to, not a waiver or release of, and IFB hereby reserves:

1. Any lack of venue or jurisdiction by this Court over this case or any adversary action, contested matter, or other proceeding ("Matter") in this case;
2. Any right to a jury trial in any Matter;
3. Any right to *de novo* review of any non-core Matter;

540261-4 (#5083)
4830-7880-7793

4. Rights to have an Article III court enter final orders on Matters to full extent provided in Stern v. Marshall;
5. Any right to contest and deny any and all claims, if any, asserted against IFB;
6. Any right to withdrawal of the reference of this case or any matter; and
7. Any other rights, claims, actions, defenses and setoff or recoupment.

## CERTIFICATE OF SERVICE

I hereby certify that on this ___27th___ of ___July___, 2021, the Proof of Claim (regarding Note #5083) was filed electronically using CM/ECF and a true and correct copy of the above and foregoing was served as follows:

___X___ Upon filing, the CM/ECF system sent notification to Debtor(s) counsel and all parties participating in the CM/ECF system in this matter as follows:

- **Ryan A. Blay**    bankruptcy@wagonergroup.com, blay@wagonergroup.com;bankruptcy@wagonergroup.com;blayrr52985@notify.bestcase.com;wmlecf@gmail.com

- **Richard Fink**    ecfincdocs@WDMO13.com

_____ Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as set forth within the matrix on file with the Clerk.

_____ Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as follows:  None

___X___ To the Office of the United States Trustee via e-mail at ustpregion13.kc.ecf@usdoj.gov.

*/s/ Michael D. Fielding*_____

540261-4 (#5083)
4830-7880-7793

INDEPENDENT FARMERS BANK/INGERSOLL
ITEMIZATION OF INTEREST, FEES, EXPENSES OR OTHER CHARGES

| | |
|---|---|
| Principal: | $140,607.23 |
| Interest: | $ 33,371.11 |
| Late Charges: | $   1,394.73 |
| TOTAL: | $175,373.07 |

540261-4 (#5083)
4830-7880-7793

# Consumer Note

 SCANNED

**Lender**

Independent Farmers Bank
201 W Main
PO Box 128
Maysville, MO 64469

**Borrower**

Thomas R Ingersoll
Kelli A Ingersoll
Carol J Caw
3004 Burnside Avenue
St. Joseph, MO 64505

**Summary**

**Loan Number:** 1▮▮5083

**Note Date:** July 22, 2016

**Loan Amount:** $153,200.00

**Maturity Date:** July 22, 2046

## Definitions

"*I*", "*me*" or "*my*" means each Borrower or Cosigner who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "*us*"). "*You*" or "*your*" means the Lender and its successors and assigns.

"*Property*" means all property securing this note.

"*Loan Documents*" means all the documents executed as a part of or in connection with the transaction.

## Existing Loan

**Refinancing.** ☐ This note will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|-----------|-------------|-------------|
|           |             |             |

The remaining balance of the refinanced note(s) listed above is $_____.

**Renewal.** ☐ This note is a renewal of the following described note(s):

| Note Date | Note Number | Note Amount |
|-----------|-------------|-------------|
|           |             |             |

The remaining balance of the renewed note(s) listed above is $_____.

## Promise to Pay

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of one hundred fifty three thousand two hundred and 00/100 dollars ($153,200.00), or so much of this amount as may be advanced from time to time under the terms of this Note.

☒ **Single Advance.** I will receive all of the loan amount on July 22, 2016. There will be no additional advances under this note. However, you may add other amounts to the principal if you make any payments described in the *Payments by Lender* section below.

☐ **Multiple Advance.** The loan amount shown above is the maximum amount I can borrow under this note. All advances will be made subject to the terms and conditions of this Note.

☐ On _____ I will receive
$_____ and future principal advances are permitted.

You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions and any separate agreement).

The conditions for future advances are

_____

**Purchase Money Loan.** ☒ You may include the name of the seller on the check or draft for this note.

## Interest and Other Charges

I agree to pay interest on the outstanding principal balance from July 22, 2016 at the rate of 6.25% per year until paid in full, subject to any rate changes provided in the *Variable Rate* section or *Post-Maturity Rate* section.

Interest accrues on the principal remaining unpaid from time to time, until paid in full. If you give my loan money in more than one advance, each advance will start to earn interest only when I receive it. The interest rate(s) and other charges on this note will never exceed the highest rate or charge allowed by law for this note. If you collect more interest than the law and this note allow, you agree to refund it to me. If you send any erroneous notice of interest, you agree to correct it.

**Variable Rate.** ☒ This rate may change as stated below. I will pay interest at the rates in effect from time to time.

> **Change Dates.** Each date on which the interest rate may change is called a "*Change Date*". The interest rate may change July 22, 2021 and every 12 months thereafter.

> **The Index.** Beginning with the first Change Date, the interest rate will be based on the following index: the base rate on corporate loans posted by at least 70%

Note-Consumer-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

05/2016
Page 1 of 6

:of the 10 largest U.S. banks known as the 'Wall Street Journal U.S. Prime Rate'. The most recent Index value available as of the date days before each Change Date is called the *"Current Index"*.

The index you select will function only as a tool for setting the rate on this note. You do not guarantee, by selecting any index, that the interest rate on this note will have a particular relationship to the interest rate you charge on any other loans or any type or class of loans with your other customers.

If the index ceases to exist, I agree that you may substitute a similar index for the original. You will follow any applicable laws regarding that substitution. You will give me notice of your choice.

**Calculation of Change.** Before each Change Date, you will calculate the new interest rate, which will be 1.5% over the Current Index. The result of this calculation will be rounded to the nearest .125% and limited as provided in the *Limitations* section. The new interest rate will become effective on the Change Date and will remain in effect until the next Change Date. If there are no further Change Dates, then the new interest rate will remain in effect until changed according to the *Post-Maturity Rate* section. If there is no change under that section, then the new interest rate will remain in effect until the note is paid in full.

**Limitations.** The following limitations (if any) apply.

☒ The interest rate cannot change more than 1.5% each time the rate changes.

☐ The interest rate cannot increase more than _____ each year.

☐ The interest rate cannot decrease more than _____ each year.

☒ The annual interest rate cannot be greater than 14.25%.

☒ The annual interest rate cannot be less than 6.25%.

**Effect of Increase or Decrease in Interest Rate.** A change in the Interest Rate will have the following effect on the payments:

The _____ will change.

**Accrual Method.** The amount of interest that I will pay on this note will be calculated on a/an Actual/365 basis. For interest calculation, the accrual method will determine the number of days in a year.

**Post-Maturity Rate.** I agree to pay interest on the unpaid balance of this note owing after maturity on the same basis as before maturity, unless I agree to a specific post-maturity rate as stated below:

☐ Interest will accrue at the rate of _____ per year on the balance of this note after the maturity date. Maturity date includes the date you demand payment of the note, either after a default or because the note is payable on demand.

**Late Charge.** ☒ If I make a payment more than 15 days after it is due, I agree to pay a late charge of 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. However, this charge will not be greater than $50.00.

**Additional Charges.** ☒ The Loan Estimate and Closing Disclosure that were given to me list the fees and charges that apply to this loan.

☐ In addition to interest, I agree to pay the following charges which are included in the principal amount above:

☐ In addition to interest, I agree to pay the following charges which are not included in the principal amount above:

**Returned Payment Fee.** ☐ I agree to pay a service charge of $_____ for each payment (check or automatic payment) returned unpaid.

## Assumption

This note and any document securing it cannot be assumed by someone buying the secured Property from me. This will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the Property securing this note, I will be in default on this note. You may proceed against me under any due on sale clause in the security agreement, which is incorporated by reference.

## Payments

I agree to pay this note as follows:

☐ **Demand.** I agree to pay this note on demand. Upon your demand the entire unpaid balance of principal and accrued interest, along with any earned, and unpaid fee or charges, and the amount of any advances made on my behalf, will be due and owing whether or not I am in default under this note.

☐ **Single Payment.** I agree to pay all principal and accrued interest on this note on or before _____

☐ **Interest Payments.** I agree to pay accrued interest on this note in _____ payments on _____ and the same day of each _____ until _____. On that date, I agree to

Note-Consumer-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

05/2016
Page 2 of 6

pay in full the principal balance and all accrued interest on this note.

☒ **Principal and Interest Payments.** I agree to pay this note in 360 monthly payments. A payment of $943.76 will be due on August 22, 2016 and on the same day of each month until July 22, 2046. On that date, I agree to pay in full the principal balance and all accrued interest on this note. See the *Effect of Increase or Decrease in Interest Rate* section regarding possible changes in the payment schedule if the interest rate changes.

☐ **Two Phase Loan.** I agree to pay accrued interest on this note in _____ payments on _____ and the same day of each _____ until _____. I agree to then make _____ payments of principal and interest on that date and on the same date of each _____ thereafter until _____. Those payments will be in an amount sufficient to pay in full the note balance outstanding on _____. On _____, I agree to pay in full the principal balance and all accrued interest on this note. See the *Effect of Increase or Decrease in Interest Rate* section regarding possible changes in the payment schedule if the interest rate changes.

☐ **Separate Balloon Disclosure.** ☐ A final balloon payment of $_____, together with accrued interest, if any, will be due _____. The actual amount of my final payment will depend on my payment record, subject to any rate changes provided in the *Variable Rate* section or *Post-Maturity Rate* section.

☐ A final balloon payment of up to $_____, together with accrued interest, if any, will be due _____. The final amount of my balloon payment will depend on my payment record and the amount advanced, subject to any rate changes provided in the *Variable Rate* section or *Post-Maturity Rate* section.

☐ **Demand Feature.** In addition I agree to pay this note on demand. Upon your demand the entire unpaid balance of principal and accrued interest, along with any earned, and unpaid fee or charges, and the amount of any advances made on my behalf, will be due and owing whether or not I am in default under this note.

☐ **Skip Payments.** Notwithstanding anything to the contrary contained in this note, no payments of _____ will be due and payable in _____ of any year during the term of this note.

☐ **Negative Amortization.** If the amount of a scheduled payment does not equal or exceed interest accrued during the payment period the unpaid portion will be added to, and will be payable with, the next scheduled payment.

**Rounding and Other Information.** Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**Application of Payments.** Except as otherwise provided in this note, each payment I make on this note will be applied first to interest that is due, then to principal that is due, and finally to escrow that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. In addition to the change in payments or payment amounts called for in the *Effect of Increase or Decrease in Interest Rate* section in the event of a change in a variable interest rate, the actual amount of my final payment will also depend on my payment record.

**Prepayment.** I may prepay this note in whole, or in part, at any time, without penalty. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full.

## Default and Remedies

**Default.** Subject to any limitations in the *Real Estate or Residence Security* section, I will be in default if any of the following occur:
1. Payments. I fail to make a payment as required by this note.
2. Property. My action or inaction significantly and adversely affects the Property or your rights in the Property.

**Remedies.** If I am in default on this note, and after you give any legally required notice and opportunity to cure the default, you have, but are not limited to, the following remedies:
1. You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges);
2. You may set off this debt against any right I have to the payment of money from you, subject to the terms of the *Set-Off* section herein;
3. You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy;

Note-Consumer-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

05/2016
Page 3 of 6

4. You may refuse to make advances to me;

5. You may use any remedy you have under state or federal law; and

6. You may require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the secured debt; and, unless prohibited by law and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the secured debts.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**Real Estate or Residence Security.** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the *Default* and *Remedies* sections of this note.

**Payments by Lender.** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**Collection Costs and Attorneys' Fees.** To the extent permitted by law, I agree to pay all costs of collection, replevin (an action for the recovery of property wrongfully taken or detained) or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any reasonable fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the *United States Bankruptcy Code*, I also agree to pay the reasonable attorneys' fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**Set-Off.** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

*"Right to receive money from you"* means:

1. Any deposit account balance I have with you;

2. Any money owed to me on an item presented to you or in your possession for collection or exchange; and

3. Any repurchase agreement or other nondeposit obligation.

*"Any amount due and payable under this note"* means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any individual retirement account or other tax-deferred retirement account.

You will not be liable for the dishonor (nonpayment) of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

## Security

☒ This note is separately secured by:

Deed of Trust dated 7/22/2016

**Other Security.** ☐ Any present or future agreement securing any other debt I owe you also will secure the payment of this note.

**Other Debts and Property.** Property securing another debt will not secure this note if such property is my principal dwelling and you fail to provide any required notice of right of rescission (i.e., right to cancel). Also, property securing another debt will not secure this note to the extent such property is household goods. No present or future agreement securing any other debt I owe you will secure the payment of this note if, with respect to this note, you fail to fulfill any necessary requirements or conform to any limitations of Regulations Z and X that are required for loans secured by the Property or if, as a result, this note would become subject to Section 670 of the *John Warner National Defense Authorization Act* for Fiscal Year 2007.

## Insurance

**Required Credit Insurance.** ☐ The insurance listed below is required to obtain credit. I have the option of furnishing the required amount of insurance through existing insurance policies owned or controlled by me, or by obtaining the required coverage through any insurer reasonably acceptable to you. If I obtain the required

Note-Consumer-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

05/2016
Page 4 of 6

credit insurance from you I will pay the following premium:

**Optional Credit Insurance.** ☐ Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such coverage, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages that you offered me on this note.

**Property Insurance.** I understand that I am free to insure my property with whatever licensed company, agent or broker I may choose; that I may do so at any time after the date of this note; that I have not cancelled any existing insurance on my property if I owned it before this note; and that this loan cannot be denied me simply because I did not purchase my insurance through you. I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay _____ for _____ of coverage.

**I MAY NOT NEED TO PURCHASE CREDIT PROPERTY INSURANCE, AND I MAY HAVE OTHER INSURANCE WHICH YOU WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. I SHOULD EXAMINE ANY OTHER INSURANCE WHICH I HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY.**

**Single Interest Insurance.** ☐ I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____ for _____ of coverage.

**Private Mortgage Insurance.** ☐ I may obtain private mortgage insurance as described in other documents I sign for the loan. You will not provide the insurance unless I separately sign and agree to pay the additional cost.

**Flood Insurance.**

☐ I will insure the real property securing the loan against hazards caused by flooding as described by other documents I sign for the loan. If I get the insurance from or through you I will pay $_____ for _____ of coverage.

☒ Flood insurance is not required at this time. It may be required in the future should the Property be included in a updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

## General Terms

This note is governed by the law of the state of Missouri, the United States of America, and to the extent required, by the law of the jurisdiction where the Property is located. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this note cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this note. No modification of this note may be made without your express written consent. Time is of the essence in this note.

**If Other Persons Owe on the Loan.** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may, without notice, release any party to this note without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.)

**Extending the Note; Assigning my Obligation.** I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this note without your prior written approval.

**Giving up my Rights.** To the extent not prohibited by law, and except for any required notice or right to cure, I give up my rights to require you to:

1. Demand payment of amounts due (presentment);
2. Obtain official certification of nonpayment (protest);
3. Give notice that amounts due have not been paid (notice of dishonor).

I give up any rights that a guarantor would have to avoid paying the note (unless it has been fully paid). I also give up any rights to avoid paying based on any action you have taken regarding any mortgage or other collateral for the note. I give up any rights under this note only if the law allows me to.

Note-Consumer-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

05/2016
Page 5 of 6

**Financial Information.** I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**Purpose.** The purpose of this note is Purchase Real Estate.

### Notice

Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is in the *Date and Parties* section. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated in the *Date and Parties* section, or to any other address that you have designated.

### Additional Terms

☐ _____

### FTC Notice

☐ **NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

### Oral Agreements

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

### Signatures

I understand that terms following a ☐ apply only if checked. **By signing, I agree to the terms contained in this note. I** also acknowledge receipt of a copy of this note on today's date.

Borrower

Thomas R Ingersoll                     Date 7-22-16

Kelli A Ingersoll                      Date 7-22-16

Carol J Caw                            Date 7-22-16

Loan Origination Organization: Independent Farmers Bank
NMLS ID: 403282

Loan Originator: Glenn Erickson
NMLS ID: 1063977

Instrument #:161088
Office of County Recorder, DeKalb County, Missouri
I hereby certify this instrument was recorded on
7/28/2016 at 3:32:53 PM
Total Fees: $54.00
Book: 223 Page: 1088
Pages: 11

JoAnn Marshall
DeKalb County Recorder

*RECORDER OF DEEDS*
*SEAL*
*DEKALB COUNTY MISSOURI*

[Space Above this Line for Recording Data]

**Title(s) of Document:** Deed of Trust

**Date of Document:** July 22, 2016

**Grantor(s):** Thomas R Ingersoll, Kelli A Ingersoll and Carol J Caw

**Grantor's Address:** 3004 Burnside Avenue, St. Joseph, MO 64505, 3004 Burnside Avenue, St. Joseph, MO 64505 and 3001 Burnside Avenue, St. Joseph, MO 64505

**Grantee(s):** Independent Farmers Bank

**Grantee's Address:** 201 W Main, PO Box 128, Maysville, MO 64469

**Full Legal Description is located on page:** 2

[Space Above this Line for Recording Data]

**Title(s) of Document:** Deed of Trust

**Date of Document:** July 22, 2016

**Grantor(s):** Thomas R Ingersoll, Kelli A Ingersoll and Carol J Caw

**Grantor's Address:** 3004 Burnside Avenue, St. Joseph, MO 64505, 3004 Burnside Avenue, St. Joseph, MO 64505 and 3001 Burnside Avenue, St. Joseph, MO 64505

**Grantee(s):** Independent Farmers Bank

**Grantee's Address:** 201 W Main, PO Box 128, Maysville, MO 64469

**Full Legal Description is located on page:** 2

# Deed of Trust

**Return To:** Independent Farmers Bank
- Maysville, 201 W Main, PO Box 128,
Maysville, MO 64469

The date of this Deed of Trust (*"Security Instrument"*) is July 22, 2016.

**Grantor**

Thomas R Ingersoll
Kelli A Ingersoll
Husband and Wife
Carol J Caw
a single person
3004 Burnside Avenue, St. Joseph, MO 64505

**Trustee**

Day Miller
PO Box 499
Maysville, MO 64469

**Lender/Grantee**

Independent Farmers Bank
201 W Main
PO Box 128
Maysville, MO 64469

**1. Conveyance.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, bargains, sells, and conveys to Trustee, in trust for the benefit of Lender, with power of sale, the following described property: (If the legal description of the Property is not on page one of this Security Instrument, it is on page(s) 2.)

TRACT A: ALL THAT PART OF BLOCK SEVENTY-SIX (76), IN THE ORIGINAL TOWN, NOW CITY OF OSBORN, DEKALB COUNTY, MISSOURI DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHEAST CORNER OF SAID BLOCK SEVENTY-SIX (76), THENCE NORTH 195 FEET, THENCE WEST 150 FEET, THENCE SOUTH 195 FEET, THENCE EAST 150 FEET TO THE PLACE OF BEGINNING. TRACT B: THAT PART OF BLOCK SEVENTY-SIX (76), IN THE CITY OF OSBORN, DEKALB COUNTY, MISSOURI, DESCRIBED AS COMMENCING AT THE SOUTHWEST CORNER OF SAID BLOCK SEVENTY-SIX (76); THENCE EAST WITH THE SOUTH LINE OF SAID BLOCK SEVENTY-SIX (76); 175 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH ONE HUNDRED NINETY-FIVE (195) FEET; THENCE WEST TO THE CENTERLINE OF CREEK; THENCE SOUTHERLY ALONG THE CENTERLINE OF SAID CREEK TO SOUTH LINE OF SAID BLOCK SEVENTY-SIX (76); THENCE EAST, TO THE TRUE POINT OF BEGINNING. ALSO PART OF BLOCK SEVENTY-SIX (76), IN THE ORIGINAL TOWN OF OSBORN, DEKALB COUNTY, MISSOURI, DESCRIBED AS FOLLOWS:

BEGINNING 93 FEET EAST OF THE NORTHWEST CORNER OF SAID BLOCK SEVENTY-SIX (76); THENCE EAST 232 FEET TO THE NORTHEAST CORNER OF SAID BLOCK SEVENTY-SIX (76); THENCE SOUTH 130 FEET; THENCE WEST TO THE CENTERLINE OF THE CREEK; THENCE SOUTH ALONG THE CENTERLINE OF SAID CREEK 3 FEET; THENCE WEST TO A POINT THAT IS 93 FEET EAST OF THE WEST LINE OF SAID BLOCK SEVENTY-SIX (76); THENCE NORTH 133 FEET TO THE POINT OF BEGINNING.

The property is located in DeKalb County at 487 E Emma Street, Osborn, Missouri 64474.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as *"Property"*).

**2. Maximum Obligation Limit.** The total principal amount secured by this Security Instrument at any one time shall not exceed $153,200.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. Secured Debt and Future Advances.** The term *"Secured Debt"* is defined as follows:

(A) Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions.

The promissory note signed by Thomas R Ingersoll; Kelli A Ingersoll and Carol J Caw (the *"Borrower"*) and dated the same date as this Security Instrument (the *"Note"*). The Note states that Borrower owes Lender one hundred fifty three thousand two hundred and 00/100 Dollars (U.S. $153,200.00) plus interest. Borrower has promised to pay this debt in regular periodic payments and to pay the debt in full not later than July 22, 2046.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

(B) All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

(C) All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

(D) All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

This Security Instrument will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or to conform to any limitations of Regulation Z and X that are required for loans secured by the Property.

**4. Payments.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**5. Warranty of Title.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

(A) To make all payments when due and to perform or comply with all covenants.

(B) To promptly deliver to Lender any notices that Grantor receives from the holder.

(C) Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. Claims Against Title.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**8. Due on Sale or Encumbrance.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**9. Warranties and Representations.** Grantor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Grantor or to which Grantor is a party.

**10. Property Condition, Alterations and Inspection.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender

of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**11. Authority to Perform.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument to the extent permitted by law.

**12. Assignment of Leases and Rents.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as *"Leases"*) and rents, issues and profits (all referred to as *"Rents"*). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument. Grantor agrees that this assignment is effective as to third parties when Lender or Trustee takes affirmative action prescribed by law, and that this assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**13. Leaseholds; Condominiums; Planned Unit Developments.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. Default.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. A significant impairment of Lender's prospect of any payment, performance, or ability to realize upon the property shall also constitute an event of default.

**15. Remedies on Default.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. Expenses; Advances on Covenants; Attorneys' Fees; Collection Costs.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include attorneys' fees (not exceeding 15% of the unpaid balance if referred to an attorney not a salaried employee of ours) and court costs. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

**17. Environmental Laws and Hazardous Substances.** As used in this section, (1) *"Environmental Law"* means, without limitation, the *Comprehensive Environmental Response, Compensation and Liability Act* (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) *"Hazardous Substance"* means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

(A) Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

(B) Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

(C) Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

(D) Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. Condemnation.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. Insurance.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding sentence can change during the term of the loan. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. Grantor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on purchase of this insurance.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property

before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. Escrow for Taxes and Insurance.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. Financial Reports and Additional Documents.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

**22. Joint and Individual Liability; Co-Signers; Successors and Assigns Bound.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

**23. Applicable Law; Severability; Interpretation.** This Security Instrument is governed by *Mo. Rev. Stat.* §443.055 and the law of the jurisdiction in which the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. Successor Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**25. Lease of the Property.** Trustee hereby leases the Property to Grantor until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Grantor, and every person claiming an interest in or possessing the Property or any part of it, shall pay rent during the term of the lease for one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**26. Notice.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address in this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

**27. Waivers.** Except to the extent prohibited by law, Grantor waives all appraisement and homestead exemption rights relating to the Property.

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (Grantor) and us (Lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

## Signatures

By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated in this Security Instrument.

**Grantor**

_____   7-22-16
Thomas R Ingersoll                                          Date

_____   7-22-16
Kelli A Ingersoll                                             Date

_____   7-22-16
Carol J Caw                                                    Date

**Lender**

**Independent Farmers Bank**

*a/an Missouri Corporation*

_____   7/22/16
Glenn Erickson                                              Date
*Vice President/CLO*

**Acknowledgment**

State of Missouri

County of DeKalb

On ___7/22/16___, before me personally appeared Thomas R Ingersoll, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

_____
*Notary Public*

Glenn Erickson
*(Print Name)*

My commission expires: ___6/10/18___

GLENN ERICKSON
My Commission Expires
June 10, 2018
DeKalb County
Commission #1462597'

**Acknowledgment**

State of Missouri

County of DeKalb

On ___7/22/16___, before me personally appeared Kelli A Ingersoll, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

_____
*Notary Public*

Glenn Erickson
*(Print Name)*

My commission expires: ___6/10/18___

GLENN ERICKSON
My Commission Expires
June 10, 2018
DeKalb County
Commission #1462597'

## Acknowledgment

State of Missouri

County of DeKalb

On _7/22/16_____, before me personally appeared Carol J Caw, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

_____
*Notary Public*

Glenn Erickson
*(Print Name)*

My commission expires: _6/10/18_____

GLENN ERICKSON
My Commission Expires
June 10, 2018
DeKalb County
Commission #1462597´

## Acknowledgment

State of Missouri

County of DeKalb

On _July 22, 2016____, before me appeared Glenn Erickson, to me personally known, who, being by me duly sworn (or affirmed) did say that he/she/they is/are the Vice President/CLO of Independent Farmers Bank, either that the seal affixed to foregoing instrument is the corporate seal of said corporation or that said corporation has no corporate seal, that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors, and that said Glenn Erickson acknowledged said instrument to be the free act and deed of said corporation.

_____
*Notary Public*

June A. Lippold
*(Print Name)*

My commission expires: _3-31-2017_____

JUNE A. LIPPOLD
Notary Public, Notary Seal
State of Missouri
Dekalb County
Commission # 13542661
My Commission Expires March 31, 2017

Loan Origination Organization: Independent Farmers Bank
NMLS ID: 403282

Loan Originator: Glenn Erickson
NMLS ID: 1063977

EXHIBIT 2

| Fill in this information to identify the case: |
|---|

Debtor 1   _____

Debtor 2   _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number   _____

Official Form 410

# Proof of Claim

**04/19**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

_____
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor   _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| _____<br>Name | _____<br>Name |
| _____<br>Number        Street | _____<br>Number        Street |
| _____<br>City            State            ZIP Code | _____<br>City            State            ZIP Code |
| Contact phone _____ | Contact phone _____ |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☐ Yes.  Claim number on court claims registry (if known) _____     Filed on _____
                                                           MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes.  Who made the earlier filing? _____

4838-7168-8435

Official Form 410                     **Proof of Claim**                    page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

❑ No

❑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**

$_____. **Does this amount include interest or other charges?**

❑ No

❑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

❑ No

❑ Yes.    The claim is secured by a lien on property.

**Nature of property:**

❑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

❑ Motor vehicle

❑ Other. Describe: _____

**Basis for perfection:**    _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed)_____%

❑ Fixed

❑ Variable

**10. Is this claim based on a lease?**

❑ No

❑ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

**11. Is this claim subject to a right of setoff?**

❑ No

❑ Yes. Identify the property: _____

4838--7168-8435

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☐ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.  $_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐   I am the creditor.

☐   I am the creditor's attorney or authorized agent.

☐   I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐   I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   _____
                    MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name  _____
      First name                Middle name                 Last name

Title  _____

Company  _____
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  _____
         Number        Street

         _____
         City                                State       ZIP Code

Contact phone   _____   Email   _____

4838-7168-8435

---

Official Form 410    **Proof of Claim**    page 3

## SUMMARY OF EXHIBITS

The following exhibits in reference to the Proof of Claim filed on behalf of Independent Farmers Bank are available at the law firm of Husch Blackwell LLP, 4801 Main Street, Suite 1000, Kansas City, Missouri 64112, upon request:

**Exhibit A**     Summary of Proof of Claim, filed with the Proof of Claim

**Exhibit B**     Consumer Note and Deed of Trust

<div style="margin-left:45%">

Respectfully submitted,

HUSCH BLACKWELL LLP


By:     */s/ Michael D. Fielding*
Michael D. Fielding, MBE #53124
4801 Main Street, Suite 1000
Kansas City, MO 64112
Office: (816) 983-8000
Facsimile: (816) 983-8080
michael.fielding@huschblackwell.com

ATTORNEYS FOR INDEPENDENT
FARMERS BANK

</div>

540261-4 (5086)
4841-7530-0081

## EXHIBIT "A"

## SUMMARY OF PROOF OF CLAIM

On or about July 22, 2016, Thomas R. Ingersoll and Kelli A. Ingersoll (the "Debtors") and Carol J. Caw ("Caw") executed a Consumer Note in favor of Independent Farmers Bank ("IFB") in the original principal amount of $49,600.00 (the "Note"). Carol Caw, a joint-owner of the real estate and co-signor to the Note, died on March 25, 2021. Because the property was held as joint tenants with right of survivorship, the title to the real estate passed to the Debtors upon her death. A copy of the Note is attached hereto as a part of Exhibit "B" and incorporated by reference herein.

In order to secure payment and performance of the Note, the Debtors and Caw pledged certain collateral to IFB including, without limitation, real property located in St. Joseph, Buchanan County, Missouri located at 3004 Burnside Avenue, St. Joseph, MO 64505 and legally described as follows:

LOT TWELVE (12), BLOCK ONE (1), SPALDINGS ADDITION TO THE CIRYT OF ST. JOSEPH, BUCHANAN COUNTY, MISSOURI.

(the "Collateral"). A copy of the Deed of Trust evidencing the claim of IFB in the collateral is attached hereto as a part of "Exhibit B" and incorporated herein by reference.

## SECURED CLAIM

IFB hereby demands payment of its secured claim which as of July 7, 2021, was in the total amount of $64,083.19 consisting of: principal of $51,574.01; plus interest in the amount of $12,000.29; plus late fees in the amount of $508.89; plus all other costs, attorney's fees, expenses, charges and other amounts due pursuant to the loan documents between the Debtors, Caw and IFB.

540261-4 (#5086)
4841-7530-0081

## RESERVATION OF RIGHTS

IFB hereby reserves the right to alter, amend, supplement, modify and/or withdraw this

Proof of Claim at any and all times.

The submission of this Proof of Claim is subject to, not a waiver or release of, and IFB

hereby reserves:

1. Any lack of venue or jurisdiction by this Court over this case or any adversary action, contested matter, or other proceeding ("Matter") in this case;
2. Any right to a jury trial in any Matter;
3. Any right to *de novo* review of any non-core Matter;
4. Rights to have an Article III court enter final orders on Matters to full extent provided in Stern v. Marshall;
5. Any right to contest and deny any and all claims, if any, asserted against IFB;
6. Any right to withdrawal of the reference of this case or any matter; and
7. Any other rights, claims, actions, defenses and setoff or recoupment.

## CERTIFICATE OF SERVICE

I hereby certify that on this ___27th___ of ___July___, 2021, the Proof of Claim (regarding Note #5086) was filed electronically using CM/ECF and a true and correct copy of the above and foregoing was served as follows:

___X___ Upon filing, the CM/ECF system sent notification to Debtor(s) counsel and all parties participating in the CM/ECF system in this matter as follows:

- **Ryan A. Blay**   bankruptcy@wagonergroup.com, blay@wagonergroup.com;bankruptcy@wagonergroup.com;blayrr52985@notify.bestcase.com;wmlecf@gmail.com

- **Richard Fink**   ecfincdocs@WDMO13.com

_____ Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as set forth within the matrix on file with the Clerk.

_____ Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as follows:  None

___X___ To the Office of the United States Trustee via e-mail at ustpregion13.kc.ecf@usdoj.gov.

*/s/ Michael D. Fielding*

540261-4 (#5086)
4841-7530-0081

INDEPENDENT FARMERS BANK/INGERSOLL
ITEMIZATION OF INTEREST, FEES, EXPENSES OR OTHER CHARGES


Principal:          $51,574.01
Interest:           $12,000.29
Late Charges:       $    508.89
TOTAL:              $64,083.19

540261-4 (#5086)
4841-7530-0081

SCANNED

# Consumer Note

| Lender | Borrower | Summary |
|---|---|---|
| Independent Farmers Bank<br>201 W Main<br>PO Box 128<br>Maysville, MO 64469 | Thomas R Ingersoll<br>Kelli A Ingersoll<br>Carol J Caw<br>3004 Burnside Avenue<br>St. Joseph, MO 64505 | **Loan Number:** ▆▆5086<br>**Note Date:** July 22, 2016<br>**Loan Amount:** $49,600.00<br>**Maturity Date:** July 22, 2046 |

## Definitions

"*I*", "*me*" or "*my*" means each Borrower or Cosigner who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "*us*"). "*You*" or "*your*" means the Lender and its successors and assigns.

"*Property*" means all property securing this note.

"*Loan Documents*" means all the documents executed as a part of or in connection with the transaction.

## Existing Loan

**Refinancing.** ☐ This note will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| | | |

The remaining balance of the refinanced note(s) listed above is $_____.

**Renewal.** ☐ This note is a renewal of the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| | | |

The remaining balance of the renewed note(s) listed above is $_____.

## Promise to Pay

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of forty nine thousand six hundred and 00/100 dollars ($49,600.00), or so much of this amount as may be advanced from time to time under the terms of this Note.

☒ **Single Advance.** I will receive all of the loan amount on July 22, 2016. There will be no additional advances under this note. However, you may add other amounts to the principal if you make any payments described in the *Payments by Lender* section below.

☐ **Multiple Advance.** The loan amount shown above is the maximum amount I can borrow under this note. All advances will be made subject to the terms and conditions of this Note.

☐ On _____ I will receive $_____ and future principal advances are permitted.

You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions and any separate agreement).

The conditions for future advances are _____.

**Purchase Money Loan.** ☐ You may include the name of the seller on the check or draft for this note.

## Interest and Other Charges

I agree to pay interest on the outstanding principal balance from July 22, 2016 at the rate of 6.25% per year until paid in full, subject to any rate changes provided in the *Variable Rate* section or *Post-Maturity Rate* section.

Interest accrues on the principal remaining unpaid from time to time, until paid in full. If you give my loan money in more than one advance, each advance will start to earn interest only when I receive it. The interest rate(s) and other charges on this note will never exceed the highest rate or charge allowed by law for this note. If you collect more interest than the law and this note allow, you agree to refund it to me. If you send any erroneous notice of interest, you agree to correct it.

**Variable Rate.** ☒ This rate may change as stated below. I will pay interest at the rates in effect from time to time.

> **Change Dates.** Each date on which the interest rate may change is called a "*Change Date*". The interest rate may change July 22, 2021 and every 12 months thereafter.

> **The Index.** Beginning with the first Change Date, the interest rate will be based on the following index: the base rate on corporate loans posted by at least 70%

Note-Consumer-MO<br>Bankers Systems™ VMP®<br>Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20150521N

05/2016<br>Page 1 of 6

of the 10 largest U.S. banks known as the 'Wall Street Journal U.S. Prime Rate". The most recent Index value available as of the date 0 days before each Change Date is called the *"Current Index"*.

The index you select will function only as a tool for setting the rate on this note. You do not guarantee, by selecting any index, that the interest rate on this note will have a particular relationship to the interest rate you charge on any other loans or any type or class of loans with your other customers.

If the index ceases to exist, I agree that you may substitute a similar index for the original. You will follow any applicable laws regarding that substitution. You will give me notice of your choice.

**Calculation of Change.** Before each Change Date, you will calculate the new interest rate, which will be 1.5% over the Current Index. The result of this calculation will be limited as provided in the *Limitations* section. The new interest rate will become effective on the Change Date and will remain in effect until the next Change Date. If there are no further Change Dates, then the new interest rate will remain in effect until changed according to the *Post-Maturity Rate* section. If there is no change under that section, then the new interest rate will remain in effect until the note is paid in full.

**Limitations.** The following limitations (if any) apply.

☒ The interest rate cannot change more than 1.5% each time the rate changes.

☐ The interest rate cannot increase more than _____ each year.

☐ The interest rate cannot decrease more than _____ each year.

☒ The annual interest rate cannot be greater than 14.25%.

☒ The annual interest rate cannot be less than 6.25%.

**Effect of Increase or Decrease in Interest Rate.** A change in the Interest Rate will have the following effect on the payments:

The _____ will change.

**Accrual Method.** The amount of interest that I will pay on this note will be calculated on a/an Actual/365 basis. For interest calculation, the accrual method will determine the number of days in a year.

**Post-Maturity Rate.** I agree to pay interest on the unpaid balance of this note owing after maturity on the same basis as before maturity, unless I agree to a specific post-maturity rate as stated below:

☐ Interest will accrue at the rate of _____ per year on the balance of this note after the maturity date. Maturity date includes the date you demand payment of the note, either after a default or because the note is payable on demand.

**Late Charge.** ☒ If I make a payment more than 15 days after it is due, I agree to pay a late charge of 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. However, this charge will not be greater than $50.00.

**Additional Charges.** ☒ The Loan Estimate and Closing Disclosure that were given to me list the fees and charges that apply to this loan.

☐ In addition to interest, I agree to pay the following charges which are included in the principal amount above:

☐ In addition to interest, I agree to pay the following charges which are not included in the principal amount above:

**Returned Payment Fee.** ☐ I agree to pay a service charge of $_____ for each payment (check or automatic payment) returned unpaid.

## Assumption

This note and any document securing it cannot be assumed by someone buying the secured Property from me. This will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the Property securing this note, I will be in default on this note. You may proceed against me under any due on sale clause in the security agreement, which is incorporated by reference.

## Payments

I agree to pay this note as follows:

☐ **Demand.** I agree to pay this note on demand. Upon your demand the entire unpaid balance of principal and accrued interest, along with any earned, and unpaid fee or charges, and the amount of any advances made on my behalf, will be due and owing whether or not I am in default under this note.

☐ **Single Payment.** I agree to pay all principal and accrued interest on this note on or before _____

☐ **Interest Payments.** I agree to pay accrued interest on this note in _____ payments on _____ and the same day of each _____ until _____. On that date, I agree to

Note-Consumer-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

05/2016
Page 2 of 6

pay in full the principal balance and all accrued interest on this note.

☒ **Principal and Interest Payments.** I agree to pay this note in 360 monthly payments. A payment of $305.55 will be due on August 22, 2016 and on the same day of each month until July 22, 2046. On that date, I agree to pay in full the principal balance and all accrued interest on this note. See the *Effect of Increase or Decrease in Interest Rate* section regarding possible changes in the payment schedule if the interest rate changes.

☐ **Two Phase Loan.** I agree to pay accrued interest on this note in _____ payments on _____ and the same day of each _____ until _____. I agree to then make _____ payments of principal and interest on that date and on the same date of each _____ thereafter until _____. Those payments will be in an amount sufficient to pay in full the note balance outstanding on _____. On _____, I agree to pay in full the principal balance and all accrued interest on this note. See the *Effect of Increase or Decrease in Interest Rate* section regarding possible changes in the payment schedule if the interest rate changes.

☐ **Separate Balloon Disclosure.** ☐ A final balloon payment of $_____, together with accrued interest, if any, will be due _____. The actual amount of my final payment will depend on my payment record, subject to any rate changes provided in the *Variable Rate* section or *Post-Maturity Rate* section.

☐ A final balloon payment of up to $_____, together with accrued interest, if any, will be due _____. The final amount of my balloon payment will depend on my payment record and the amount advanced, subject to any rate changes provided in the *Variable Rate* section or *Post-Maturity Rate* section.

☐ **Demand Feature.** In addition I agree to pay this note on demand. Upon your demand the entire unpaid balance of principal and accrued interest, along with any earned, and unpaid fee or charges, and the amount of any advances made on my behalf, will be due and owing whether or not I am in default under this note.

☐ **Skip Payments.** Notwithstanding anything to the contrary contained in this note, no payments of _____ will be due and payable in _____ of any year during the term of this note.

☐ **Negative Amortization.** If the amount of a scheduled payment does not equal or exceed interest accrued during the payment period the unpaid portion will be added to, and will be payable with, the next scheduled payment.

**Rounding and Other Information.** Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**Application of Payments.** Except as otherwise provided in this note, each payment I make on this note will be applied first to interest that is due, then to principal that is due, and finally to escrow that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. In addition to the change in payments or payment amounts called for in the *Effect of Increase or Decrease in Interest Rate* section in the event of a change in a variable interest rate, the actual amount of my final payment will also depend on my payment record.

**Prepayment.** I may prepay this note in whole, or in part, at any time, without penalty. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full.

## Default and Remedies

**Default.** Subject to any limitations in the *Real Estate or Residence Security* section, I will be in default if any of the following occur:
1. Payments. I fail to make a payment as required by this note.
2. Property. My action or inaction significantly and adversely affects the Property or your rights in the Property.

**Remedies.** If I am in default on this note, and after you give any legally required notice and opportunity to cure the default, you have, but are not limited to, the following remedies:
1. You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges);
2. You may set off this debt against any right I have to the payment of money from you, subject to the terms of the *Set-Off* section herein;
3. You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy;

Note-Consumer-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

05/2016
Page 3 of 6

4. You may refuse to make advances to me;

5. You may use any remedy you have under state or federal law; and

6. You may require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the secured debt; and, unless prohibited by law and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the secured debts.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**Real Estate or Residence Security.** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the *Default* and *Remedies* sections of this note.

**Payments by Lender.** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**Collection Costs and Attorneys' Fees.** To the extent permitted by law, I agree to pay all costs of collection, replevin (an action for the recovery of property wrongfully taken or detained) or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any reasonable fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the *United States Bankruptcy Code*, I also agree to pay the reasonable attorneys' fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**Set-Off.** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

*"Right to receive money from you"* means:

1. Any deposit account balance I have with you;

2. Any money owed to me on an item presented to you or in your possession for collection or exchange; and

3. Any repurchase agreement or other nondeposit obligation.

*"Any amount due and payable under this note"* means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any individual retirement account or other tax-deferred retirement account.

You will not be liable for the dishonor (nonpayment) of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

## Security

☒ This note is separately secured by:

Deed of Trust dated 07/22/2016

**Other Security.** ☐ Any present or future agreement securing any other debt I owe you also will secure the payment of this note.

**Other Debts and Property.** Property securing another debt will not secure this note if such property is my principal dwelling and you fail to provide any required notice of right of rescission (i.e., right to cancel). Also, property securing another debt will not secure this note to the extent such property is household goods. No present or future agreement securing any other debt I owe you will secure the payment of this note if, with respect to this note, you fail to fulfill any necessary requirements or conform to any limitations of Regulations Z and X that are required for loans secured by the Property or if, as a result, this note would become subject to Section 670 of the *John Warner National Defense Authorization Act* for Fiscal Year 2007.

## Insurance

**Required Credit Insurance.** ☐ The insurance listed below is required to obtain credit. I have the option of furnishing the required amount of insurance through existing insurance policies owned or controlled by me, or by obtaining the required coverage through any insurer reasonably acceptable to you. If I obtain the required

credit insurance from you I will pay the following premium:

**Optional Credit Insurance.** ☐ Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such coverage, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages that you offered me on this note.

**Property Insurance.** I understand that I am free to insure my property with whatever licensed company, agent or broker I may choose; that I may do so at any time after the date of this note; that I have not cancelled any existing insurance on my property if I owned it before this note; and that this loan cannot be denied me simply because I did not purchase my insurance through you. I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay _____ for _____ of coverage.

**I MAY NOT NEED TO PURCHASE CREDIT PROPERTY INSURANCE, AND I MAY HAVE OTHER INSURANCE WHICH YOU WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. I SHOULD EXAMINE ANY OTHER INSURANCE WHICH I HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY.**

**Single Interest Insurance.** ☐ I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____ for _____ of coverage.

**Private Mortgage Insurance.** ☐ I may obtain private mortgage insurance as described in other documents I sign for the loan. You will not provide the insurance unless I separately sign and agree to pay the additional cost.

**Flood Insurance.**

☐ I will insure the real property securing the loan against hazards caused by flooding as described by other documents I sign for the loan. If I get the insurance from or through you I will pay $_____ for _____ of coverage.

☒ Flood insurance is not required at this time. It may be required in the future should the Property be included in a updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

## General Terms

This note is governed by the law of the state of Missouri, the United States of America, and to the extent required, by the law of the jurisdiction where the Property is located. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this note cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this note. No modification of this note may be made without your express written consent. Time is of the essence in this note.

**If Other Persons Owe on the Loan.** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may, without notice, release any party to this note without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.)

**Extending the Note; Assigning my Obligation.** I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this note without your prior written approval.

**Giving up my Rights.** To the extent not prohibited by law, and except for any required notice or right to cure, I give up my rights to require you to:

1. Demand payment of amounts due (presentment);
2. Obtain official certification of nonpayment (protest);
3. Give notice that amounts due have not been paid (notice of dishonor).

I give up any rights that a guarantor would have to avoid paying the note (unless it has been fully paid). I also give up any rights to avoid paying based on any action you have taken regarding any mortgage or other collateral for the note. I give up any rights under this note only if the law allows me to.

Note-Consumer-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

05/2016
Page 5 of 6

**Financial Information.** I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**Purpose.** The purpose of this note is Down payment and closing cost plus new money.

## Notice

Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is in the *Date and Parties* section. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated in the *Date and Parties* section, or to any other address that you have designated.

## Additional Terms

☐ _____

## FTC Notice

> ☐ **NOTICE**
>
> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

## Oral Agreements

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

## Signatures

I understand that terms following a ☐ apply only if checked. By signing, I agree to the terms contained in this note. I also acknowledge receipt of a copy of this note on today's date.

Borrower

_____ 7-20-16    _____ 7-22-16
Thomas R Ingersoll                  Date      Kelli A Ingersoll                  Date

_____ 7-22-16
Carol J Caw                        Date

Loan Origination Organization: Independent Farmers Bank
NMLS ID: 403282

Loan Originator: Glenn Erickson
NMLS ID: 1063977

Note-Consumer-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

05/2016
Page 6 of 6



FILE NUMBER 2016007532
BK 3585 PG 970
RECORDED 07/28/2016 03:49:53 PM
RECORDING FEE 54.00
ED WILDBERGER, RECORDER OF DEEDS
BUCHANAN COUNTY, MISSOURI
ELECTRONICALLY RECORDED
AARMAGOST

[Space Above this Line for Recording Data]

**Title(s) of Document:** Deed of Trust

**Date of Document:** July 22, 2016

**Grantor(s):** Thomas R Ingersoll, Kelli A Ingersoll and Carol J Caw

**Grantor's Address:** 3004 Burnside Avenue, St. Joseph, MO 64505, 3004 Burnside Avenue, St. Joseph, MO 64505 and 3001 Burnside Avenue, St. Joseph, MO 64505

**Grantee(s):** Independent Farmers Bank

**Grantee's Address:** 201 W Main, PO Box 128, Maysville, MO 64469

**Full Legal Description is located on page:** 2

[Space Above this Line for Recording Data]

**Title(s) of Document:** Deed of Trust

**Date of Document:** July 22, 2016

**Grantor(s):** Thomas R Ingersoll, Kelli A Ingersoll and Carol J Caw

**Grantor's Address:** 3004 Burnside Avenue, St. Joseph, MO 64505, 3004 Burnside Avenue, St. Joseph, MO 64505 and 3001 Burnside Avenue, St. Joseph, MO 64505

**Grantee(s):** Independent Farmers Bank

**Grantee's Address:** 201 W Main, PO Box 128, Maysville, MO 64469

**Full Legal Description is located on page:** 2

Deed Of Trust Closed End-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014
2016072116.1.1.3555-N20160521N
04/2016
Page 1 of 11

# Deed of Trust

**Return To:** Independent Farmers Bank
- Maysville, 201 W Main, PO Box 128,
Maysville, MO 64469

The date of this Deed of Trust (*"Security Instrument"*) is July 22, 2016.

| **Grantor** | **Trustee** |
|---|---|
| Thomas R Ingersoll | Day Miller |
| Kelli A Ingersoll | PO Box 499 |
| Husband and Wife | Maysville, MO 64469 |
| Carol J Caw | |
| a single person | |
| 3004 Burnside Avenue,  St. Joseph, MO 64505 | |

### Lender/Grantee

Independent Farmers Bank
201 W Main
PO Box 128
Maysville, MO 64469

**1. Conveyance.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, bargains, sells, and conveys to Trustee, in trust for the benefit of Lender, with power of sale, the following described property: (If the legal description of the Property is not on page one of this Security Instrument, it is on page(s) 2.)

LOT TWELVE (12), BLOCK ONE (1), SPALDINGS ADDITION TO THE CITY OF ST. JOSEPH, BUCHANAN COUNTY, MISSOURI.

The property is located in Buchanan County at 3004 Burnside Avenue, St. Joseph, Missouri 64505.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as *"Property"*).

**2. Maximum Obligation Limit.** The total principal amount secured by this Security Instrument at any one time shall not exceed $49,600.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not

apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. Secured Debt and Future Advances.** The term *"Secured Debt"* is defined as follows:

(A) Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions.

The promissory note signed by Thomas R Ingersoll; Kelli A Ingersoll and Carol J Caw (the *"Borrower"*) and dated the same date as this Security Instrument (the *"Note"*). The Note states that Borrower owes Lender forty nine thousand six hundred and 00/100 Dollars (U.S. $49,600.00) plus interest. Borrower has promised to pay this debt in regular periodic payments and to pay the debt in full not later than July 22, 2046.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

(B) All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

(C) All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

(D) All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

This Security Instrument will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or to conform to any limitations of Regulation Z and X that are required for loans secured by the Property.

**4. Payments.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**5. Warranty of Title.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

(A) To make all payments when due and to perform or comply with all covenants.

(B) To promptly deliver to Lender any notices that Grantor receives from the holder.

(C) Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. Claims Against Title.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**8. Due on Sale or Encumbrance.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**9. Warranties and Representations.** Grantor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Grantor or to which Grantor is a party.

**10. Property Condition, Alterations and Inspection.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**11. Authority to Perform.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument to the extent permitted by law.

**12. Assignment of Leases and Rents.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use

and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as *"Leases"*) and rents, issues and profits (all referred to as *"Rents"*). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument. Grantor agrees that this assignment is effective as to third parties when Lender or Trustee takes affirmative action prescribed by law, and that this assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**13. Leaseholds; Condominiums; Planned Unit Developments.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. Default.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. A significant impairment of Lender's prospect of any payment, performance, or ability to realize upon the property shall also constitute an event of default.

**15. Remedies on Default.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured

Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. Expenses; Advances on Covenants; Attorneys' Fees; Collection Costs.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include attorneys' fees (not exceeding 15% of the unpaid balance if referred to an attorney not a salaried employee of ours) and court costs. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

**17. Environmental Laws and Hazardous Substances.** As used in this section, (1) *"Environmental Law"* means, without limitation, the *Comprehensive Environmental Response, Compensation and Liability Act* (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) *"Hazardous Substance"* means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:
- (A) Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
- (B) Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
- (C) Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.
- (D) Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. Condemnation.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. Insurance.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding sentence can change during the term of the loan. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. Grantor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on purchase of this insurance.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. Escrow for Taxes and Insurance.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. Financial Reports and Additional Documents.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

**22. Joint and Individual Liability; Co-Signers; Successors and Assigns Bound.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against

Deed Of Trust Closed End-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

04/2016
Page 7 of 11

Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

**23. Applicable Law; Severability; Interpretation.** This Security Instrument is governed by *Mo. Rev. Stat.* §443.055 and the law of the jurisdiction in which the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. Successor Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**25. Lease of the Property.** Trustee hereby leases the Property to Grantor until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Grantor, and every person claiming an interest in or possessing the Property or any part of it, shall pay rent during the term of the lease for one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**26. Notice.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address in this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

**27. Waivers.** Except to the extent prohibited by law, Grantor waives all appraisement and homestead exemption rights relating to the Property.

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (Grantor) and us (Lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

## Signatures

By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated in this Security Instrument.

**Grantor**

_____     7-22-16
Thomas R Ingersoll                  Date

_____     7-22-16
Kelli A Ingersoll                   Date

_____     7-22-16
Carol J Caw                     Date

**Lender**

**Independent Farmers Bank**

_a/an Missouri Corporation_

_____     7/22/16
Glenn Erickson                   Date
_Vice President/CLO_

## Acknowledgment

State of Missouri

County of DeKalb

On ___7/22/16___, before me personally appeared Thomas R Ingersoll, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

_____
*Notary Public*

GLENN ERICKSON
My Commission Expires
June 10, 2018
DeKalb County
Commission #1462597'

___Glenn Erickson___
*(Print Name)*
My commission expires: ___6/10/18___

## Acknowledgment

State of Missouri

County of DeKalb

On ___7/22/16___, before me personally appeared Kelli A Ingersoll, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

_____
*Notary Public*

GLENN ERICKSON
My Commission Expires
June 10, 2018
DeKalb County
Commission #1462597'

___Glenn Erickson___
*(Print Name)*
My commission expires: ___6/10/18___

Deed Of Trust Closed End-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

04/2016
Page 10 of 11

**Acknowledgment**

State of Missouri

County of DeKalb

On __7/22/18__, before me personally appeared Carol J Caw, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

_____
*Notary Public*

Glenn Erickson
*(Print Name)*

My commission expires: __6/10/18__

GLENN ERICKSON
My Commission Expires
June 10, 2018
DeKalb County
Commission #1462597

**Acknowledgment**

State of Missouri

County of DeKalb

On __July 22, 2016__, before me appeared Glenn Erickson, to me personally known, who, being by me duly sworn (or affirmed) did say that he/she/they is/are the Vice President/CLO of Independent Farmers Bank, either that the seal affixed to foregoing instrument is the corporate seal of said corporation or that said corporation has no corporate seal, that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors, and that said Glenn Erickson acknowledged said instrument to be the free act and deed of said corporation.

_____
*Notary Public*

June A. Lippold
*(Print Name)*

My commission expires: __3-31-2017__

JUNE A. LIPPOLD
Notary Public, Notary Seal
State of Missouri
Dekalb County
Commission # 13542661
My Commission Expires March 31, 2017

Loan Origination Organization: Independent Farmers Bank

NMLS ID: 403282

Loan Originator: Glenn Erickson

NMLS ID: 1063977

Deed Of Trust Closed End-MO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2016072116.1.1.3555-N20160521N

04/2016
Page 11 of 11

EXHIBIT 3

| Fill in this information to identify the case: |
| --- |
| Debtor 1 _____ |
| Debtor 2 _____ <br> (Spouse, if filing) |
| United States Bankruptcy Court for the: _____ District of _____ |
| Case number _____ |

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

---

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

_____
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| _____<br>Name | _____<br>Name |
| _____<br>Number        Street | _____<br>Number        Street |
| _____<br>City                State            ZIP Code | _____<br>City                State            ZIP Code |
| Contact phone _____ | Contact phone  816-449-2182 |
| Contact email _____ | Contact email  jill@farmbank.net |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☐ Yes.  Claim number on court claims registry (if known) _____        Filed on _____
                                                                                                MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes.  Who made the earlier filing? _____

---

4811-6813-1571

Official Form 410                                **Proof of Claim**                                page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

❑ No
❑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____. **Does this amount include interest or other charges?**

❑ No
❑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

❑ No
❑ Yes. The claim is secured by a lien on property.

**Nature of property:**

❑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
❑ Motor vehicle
❑ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____ = Scheduled Value

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%
❑ Fixed
❑ Variable

**10. Is this claim based on a lease?**

❑ No
❑ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

❑ No
❑ Yes. Identify the property: _____

| | |
|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No<br><br>☐ Yes. *Check one:* |

<div></div>

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   _____
                          MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name        _____
            First name              Middle name              Last name

Title       _____

Company     _____
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     _____
            Number        Street

            _____
            City                              State    ZIP Code

Contact phone   _____     Email   _____

4811-6813-1571

# SUMMARY OF EXHIBITS

The following exhibits in reference to the Proof of Claim filed on behalf of Independent

Farmers Bank are available at the law firm of Husch Blackwell LLP, 4801 Main Street, Suite

1000, Kansas City, Missouri  64112, upon request:

**Exhibit A**     Summary of Proof of Claim, filed with the Proof of Claim

**Exhibit B**     Promissory Note, Security Agreement and Notice of Lien

Respectfully submitted,

HUSCH BLACKWELL LLP

By:     */s/ Michael D. Fielding*
         Michael D. Fielding, MBE #53124
         4801 Main Street, Suite 1000
         Kansas City, MO  64112
         Office: (816) 983-8000
         Facsimile:  (816) 983-8080
         michael.fielding@huschblackwell.com

ATTORNEYS FOR INDEPENDENT
FARMERS BANK

540261-4 (6093)
4833-0819-3521

## EXHIBIT "A"

## SUMMARY OF PROOF OF CLAIM

On or about June 29, 2017, Thomas R. Ingersoll and Kelli A. Ingersoll (the "Debtors")

executed a Promissory Note and Security Agreement in favor of Independent Farmers Bank

("IFB") in the original principal amount of $15,542.21 (the "Note"). A copy of the Note is

attached hereto as a part of Exhibit "B" and incorporated by reference herein.

In order to secure payment and performance of the Note, the Debtors pledged certain

collateral to IFB including, without limitation, a 2013 Jeep Grand Cherokee, VIN:

1CARJFAG0DC548622 (the "Collateral"). A copy of the Notice of Lien evidencing the claim

of IFB in the collateral is attached hereto as a part of "Exhibit B" and incorporated herein by

reference.

## SECURED CLAIM

IFB hereby demands payment of its secured claim which as of July 7, 2021, was in the

total amount of $12,359.56 consisting of: principal of $8,677.43; plus interest in the amount of

$3,097.90; plus late fees in the amount of $584.23; plus all other costs, attorney's fees, expenses,

charges and other amounts due pursuant to the loan documents between the Debtors and IFB.

## RESERVATION OF RIGHTS

IFB hereby reserves the right to alter, amend, supplement, modify and/or withdraw this

Proof of Claim at any and all times.

The submission of this Proof of Claim is subject to, not a waiver or release of, and IFB

hereby reserves:

1. Any lack of venue or jurisdiction by this Court over this case or any adversary action, contested matter, or other proceeding ("Matter") in this case;
2. Any right to a jury trial in any Matter;
3. Any right to *de novo* review of any non-core Matter;

4. Rights to have an Article III court enter final orders on Matters to full extent provided in <u>Stern v. Marshall</u>;
5. Any right to contest and deny any and all claims, if any, asserted against IFB;
6. Any right to withdrawal of the reference of this case or any matter; and
7. Any other rights, claims, actions, defenses and setoff or recoupment.


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this __27th__ of __July__, 2021, the Proof of Claim (regarding Note #9063) was filed electronically using CM/ECF and a true and correct copy of the above and foregoing was served as follows:

__X__ Upon filing, the CM/ECF system sent notification to Debtor(s) counsel and all parties participating in the CM/ECF system in this matter as follows:

- **Ryan A. Blay**   bankruptcy@wagonergroup.com, blay@wagonergroup.com;bankruptcy@wagonergroup.com;blayrr52985@notify.bestcase .com;wmlecf@gmail.com

- **Richard Fink**   ecfincdocs@WDMO13.com

_____ Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as set forth within the matrix on file with the Clerk.

_____ Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as follows:  None

__X__ To the Office of the United States Trustee via e-mail at <u>ustpregion13.kc.ecf@usdoj.gov.</u>


                                        */s/ Michael D. Fielding*

540261-4 (#6093)
4833-0819-3521

INDEPENDENT FARMERS BANK/INGERSOLL
ITEMIZATION OF INTEREST, FEES, EXPENSES OR OTHER CHARGES


| | |
|---|---|
| Principal: | $ 8,677.43 |
| Interest: | $ 3,097.90 |
| Late Charges: | $   584.23 |
| TOTAL: | $12,359.56 |

540261-4 (#6093)
4833-0819-3521

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| ▆▆▆▆6093 | Thomas R Ingersoll | | 06/29/17 | GLE |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $15,542.21 | Not Applicable | 8.500% | 06/23/21 | Consumer |
| | | Creditor Use Only | | |

# PROMISSORY NOTE, SECURITY AGREEMENT AND TRUTH-IN-LENDING DISCLOSURES
(Consumer - Closed End)

**DATE AND PARTIES.** The date of this Promissory Note, Security Agreement and Truth-In-Lending Disclosures (Loan Agreement) is June 29, 2017. The parties and their addresses are:

**LENDER:**
INDEPENDENT FARMERS BANK
201 W Main
PO Box 128
Maysville, MO 64469
Telephone: (816) 449-2182

**BORROWER:**
THOMAS R INGERSOLL
487 East Emma Street
Osborn, MO 64474

KELLI A INGERSOLL
487 East Emma Street
Osborn, MO 64474

The pronouns "I," "me," and "my" refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan. Loan Documents refer to all the documents executed as a part of or in connection with the Loan. Property means any property, real, personal or intangible, that secures my performance of the obligations of this Loan Agreement. Rates and rate change limitations are expressed as annualized percentages. All dollar amounts will be payable in lawful money of the United States of America.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of my credit as a yearly rate. | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid when I have made all scheduled payments. |
| 8.627% | $2,858.05 | $15,507.21 | $18,365.26 |

**Payment Schedule.** My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 47 | $382.61 | Monthly beginning July 23, 2017 |
| 1 | $382.59 | June 23, 2021 |

**Security.** I am giving a security interest in:

Motor Vehicle (Non-Residence)

Collateral securing other loans with you may also secure this loan.

**Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. However, this charge will not be greater than $50.00.

**Prepayment.** If I pay off early, I will not have to pay a penalty.

**Assumption.** Someone buying the Property securing the obligation cannot assume the remainder of the obligation on the original terms.

**Contract Documents.** I will see my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**1. REFINANCING.** This Loan Agreement will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| November 16, 2016 | # ▆▆▆6631 | $14,337.81 |
| February 2, 2017 | # ▆▆▆5766 | $2,000.00 |

The remaining balance of all notes listed in the table above is $14,753.96.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order the principal sum of **$15,542.21 (Principal)** plus interest at the rate of **8.500 percent (Interest Rate)** from June 29, 2017 on the unpaid Principal balance until this Loan Agreement matures or this obligation is accelerated.

After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Loan Agreement at the Interest Rate in effect from time to time, until paid in full. Any amount assessed or collected as interest under the terms of this Loan Agreement will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me. Interest accrues using an Actual/365 days counting method.

**3. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Loan Agreement before the scheduled maturity date.
Loan Origination. A(n) Loan Origination fee of $35.00 payable from the loan proceeds.

**4. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Loan Agreement.

A. **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. However, this charge will not be greater than $50.00. I will pay this late charge promptly but only once for each late payment.

**5. PAYMENT.** I agree to pay this Loan Agreement in 48 payments. I will make 47 payments of $382.61 beginning on July 23, 2017, and on the 23rd day of each month thereafter. A single, final payment of the entire unpaid balance of Principal and interest will be due June 23, 2021.

---

Thomas R Ingersoll
Missouri **Promissory Note, Security Agreement and Truth-In-Lending Disclosures**
MO/4XXBJRHEA00000000001289032062917N          Wolters Kluwer Financial Services ©1996, 2017 Bankers Systems™          Page 1

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Loan Agreement will be applied first to interest that is due, then to principal that is due, and finally to any charges that I owe other than principal and interest. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**6. PREPAYMENT.** I may prepay this Loan Agreement in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**7. LOAN PURPOSE.** The purpose of this Loan is for personal expense and payoff ████5631 & ████6766.

**8. SECURITY.** The Loan is secured by Property described in the SECURITY AGREEMENT section of this Loan Agreement and by the following, previously executed, security instruments or agreements: dated 11/16/2016 (loan # ████5631).

**9. SECURITY AGREEMENT.**

    **A. Secured Debts.** This Security Agreement will secure the following debts (Secured Debts), together with all extensions, renewals, refinancings, modifications and replacements of these debts:

        (1) Sums Advanced under the terms of this Loan Agreement. All sums advanced and expenses incurred by you under the terms of this Loan Agreement.

        (2) All Debts. All present and future debts of all Borrowers owing to you, even if this Security Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Agreement. Nothing in this Security Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

        This Security Agreement will not secure any debt which is also secured by real property or for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. In addition, this Security Agreement will not secure any other debt if, with respect to such other debt, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

    **B. Limitations on Cross-collateralization.** The cross-collateralization clause on any existing or future loan, but not including this Loan, is void and ineffective as to this Loan, including any extension or refinancing.

    The Loan is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

    The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

    **C. Security Interest.** To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Security Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Security Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

    **Notice - The Property may also serve as collateral for future advances.**

    Property also includes any original evidence of title or ownership whether evidenced by a certificate of title or ownership, a manufacturer's statement of origin or other document when the Property is titled under any federal or state law. I will deliver the title documents and properly execute all title documents as necessary to reflect your security interest.

    This Security Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

    **D. Property Description.** The Property subject to this Security Agreement is described as follows:

        (1) **Motor Vehicle, Mobile Home, Sport Craft, or Trailer. A Motor Vehicle of Make: JEEP, Year: 2013, Model: GRAND CHEROKEE, VIN: 1C4RJFAG0DC548622.**

    **E. Duties Toward Property.**

        (1) Protection of Secured Party's Interest. I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

        (2) Use, Location, and Protection of the Property. I will use the Property only for personal, family, or household purposes. I will not use the Property in violation of any law.

        I will keep the Property in my possession at my address. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

        Until this Security Agreement is terminated, I will not grant a security interest in, or otherwise encumber, any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

        (3) Additional Duties Specific to Motor Vehicles, Sport Craft, or Trailers. So long as I am not in default under this Security Agreement, the Motor Vehicle, Sport Craft, or Trailer portion of the Property will not be restricted to a specific location and may be moved as necessary during ordinary use. However, they may not be taken out of state permanently nor removed from the United States or Canada without your prior written consent.

    **F. Authority To Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, without notice to me, to perform the duties or cause them to be performed.

    You are authorized, but are not limited, to: pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property; pay any rents or other charges under any lease affecting the Property; order and pay for the repair, maintenance and preservation of the Property; file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property; place a note on any chattel paper indicating your interest in the Property; take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name; handle any suits or other proceedings involving the Property in my name. If you perform for me, you will use reasonable care.

    **G. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I am located at the address indicated in the DATE AND PARTIES section. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

    **H. Perfection of Security Interest.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all actual costs of terminating your security interest.

**10. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

    **A. Payments.** I fail to make a payment when due.

    **B. Other Events.** Anything else happens that causes you to reasonably believe that the prospect of payment, performance or realization of the Property is significantly impaired.

**11. WAIVERS AND CONSENT.** To the extent not prohibited by law and except for a required notice of right to cure for the failure to make a required payment, if any, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor. In addition, I, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Loan Agreement. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer. You may release, substitute or impair any Property securing this Loan Agreement. You, or any institution participating in this Loan Agreement, may invoke your right of set-off. You may enter into any sales, repurchases or participations of this Loan Agreement to any person in any amounts and I waive notice of such sales, repurchases or participations. I agree that any of us signing this Loan Agreement as a Borrower is authorized to modify the terms of this Loan Agreement or any instrument securing, guarantying or relating to this Loan

Agreement. Except to the extent prohibited by law, I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**12. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Loan Agreement immediately due. This remedy is subject to my limited right to cure certain defaults and to receive notice of such a right under Mo. Rev. Stat. § 408.555.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Loan Agreement, and accrue interest at the highest post-maturity interest rate.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Set-Off.** You may set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by applicable law.

**G. Repossession.** You may require me to gather and make the Property available to you. You may repossess the Property so long as the repossession does not involve a breach of the peace. This remedy is subject to my limited right to cure certain defaults and to receive notice of such a right under Mo. Rev. Stat. § 408.555. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Loan Agreement will be reasonable notice to me under the Missouri Uniform Commercial Code.

**H. Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

**I. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**13. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Loan Agreement or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, not in excess of 15 percent of the amount due and payable, if referred to an attorney who is not your salaried employee, together with any assessed court costs. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan Agreement. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**14. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**15. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or to which I am a party.

**16. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

**A. Property Insurance.** I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Loan Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. You may demand that I pay for the insured all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. This insurance coverage does not satisfy any liability or property insurance that may be mandated by applicable state or federal law. I acknowledge and agree that you or one of your affiliates may receive commissions on the purchase of this insurance.

I understand that I am free to insure my Property with whatever licensed company, agent or broker I may choose; that I may do so at any time after the date of the Loan; that I have not cancelled existing insurance on my Property if I owned it before the Loan; and that the Loan cannot be denied me simply because I did not purchase my insurance through the lender or seller.

**17. COLLATERAL PROTECTION INSURANCE NOTICE.** Unless I provide you with evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral. This insurance may, but need not, protect my interests. The coverage that you purchase may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by you, but only after providing you with evidence that I have obtained insurance as required by our agreement. If you purchase insurance for the collateral, I will be responsible for the costs of that insurance, including the insurance premiums, interest and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of the insurance I may be able to obtain on my own.

**18. GENERAL PROVISIONS.** If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of the agreement and may not be amended or modified by oral agreement. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007. This Loan Agreement is governed by the laws of Missouri, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**19. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**ITEMIZATION OF AMOUNT FINANCED**

| | |
|---|---|
| **NOTE AMOUNT** | $15,542.21 |
| Amount given to me directly: | |
| (none) | $753.25 |
| Total amount given to me directly | $753.25 |

Amount paid on my account:

| | |
|---|---|
| LOA - Loan Payment/Payoff ▮▮▮▮ | $1,786.03 |
| LOA - Loan Payment/Payoff ▮▮▮▮ | $12,967.93 |
| Total amount paid on my account | $14,753.96 |

Amount paid to Lender      $0.00

Amount paid to others on my behalf*:

Prepaid finance charge amount paid to others on my behalf

| | |
|---|---|
| Independent Farmers Bank | $35.00 |
| Total prepaid finance charge amount paid to others | $35.00 |

LESS: PREPAID FINANCE CHARGE      $35.00

AMOUNT FINANCED      $15,507.21

*Lender may retain or receive portions of these amounts.

---

**ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER) AND US (LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

20. SIGNATURES. By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement.

BORROWER:

Thomas R Ingersoll      Date 6-29-17

Kelli A Ingersoll      Date 6-29-17

---

ORIGINAL MOTOR VEHICLE TITLE RECEIPT

 

2.1

2016144014010DF829000070001

## OWNER INFORMATION

INGERSOLL KELLI A & THOMAS R
487 E EMMA ST
OSBORN, MO 64474

COUNTY: DEKALB

### OWNER(S)

INGERSOLL KELLI A & THOMAS R

TRANSFER ON DEATH

## VEHICLE INFORMATION

| MAKE | YEAR | VEHICLE ID NUMBER | KIND OF VEHICLE | BODY STYLE | ODOMETER | ODOMETER CODE | PURCHASE DATE |
|---|---|---|---|---|---|---|---|
| JEEP | 2013 | 1C4RJFAG0DC548622 | PASSENGER | UTILI | 40587 | ACTUAL MILEAGE | 09/08/2012 |
| BRAND CODE | | | | | | | |

## LIEN HOLDER(S) INFORMATION

INDEPENDENT FARMERS
P.O. BOX 128
MAYSVILLE, MO 64469

LIEN DATE: 11/16/2016
SUBJECT TO FUTURE ADVANCES

## FEE ASSESSMENT INFORMATION

TAX EXEMPTION    01  - TAXES PREVIOUSLY PAID TO MISSOURI

## FEE INFORMATION

| DESCRIPTION - CODE | AMOUNT |
|---|---|
| TITLING FEE / MOTOR VEHICLE ORIGINAL/NON-NEGOTIABLE/SALVAGE TITLE - 0582 | $8.50 |
| AGENT FEE / AGENT FEE - 0708 | $5.00 |
| NOTICE OF LIEN FEE / NOTICE OF LIEN - $0 - 0094 | $0.00 |
| TOTAL PAID: | $13.50 |

Any false affidavit is a crime under Section 575.050 of Missouri Law.

This is your title application receipt and proof of lien perfection. Please retain for your records.

## SIGNATURE STATEMENT

I certify under penalty of perjury that the facts herein are true to the best of my knowledge.

SIGNATURE:    X SEE SUPPORTING DOCUMENTS

NOTE: The Missouri Department of Revenue may electronically resubmit checks returned for insufficient or uncollected funds. Other restrictions may apply.

## MAIL TITLE TO INFORMATION

INGERSOLL KELLI A & THOMAS R
487 E EMMA ST
OSBORN, MO 64474

## FOR OFFICE USE ONLY

NMVTIS Control ID:
1612151326110001



*Your Opinion Matters! Please tell us if our service met your expectations at www.dor.mo.gov.*

MAYSVILLE
Office: 014010
Operator - Time: DF8290 - 12/15/2016 1:41:28 PM
Workstation: 3
Shipment: 144

Missouri Department of Revenue
PO Box 100
Jefferson City, MO 65105-0100
(573) 526-3669
www.dor.mo.gov

2016144014010DF82900007

1500 5631

# HUSCH BLACKWELL

Michael D. Fielding
Partner

4801 Main Street, Suite 1000
Kansas City, MO  64112
Direct: 816.983.8353
Fax: 816.983.8080
michael.fielding@huschblackwell.com

May 16, 2022

**VIA U.S. Mail and Email**

Ryan A. Blay
Wm Law
15095 W 116th St.
Olathe, KS 66049
Email: bankruptcy@wagonergroup.com

       *Re:*    *Request for Proof of Insurance*
              *In re Ingersoll* **(Bankr. W.D. Mo. Case No. 21-50191)**
              **Our file No. 540261-4**

Dear Ryan:

      Independent Farmers Bank ("IFB") has an interest in a 2013 Jeep with Vehicle Identification No. 1C4RJFAG0DC548622 ("Vehicle") which is currently in the possession of Debtors Thomasen R. Ingersoll and Kelli A. Ingersoll ("Debtors").  Additionally, IFB has deeds of trust in two parcels of property owned by the Debtors which are located at 487 E Emma Street, Osborn, Missouri 64474 ("Emma Property") and 3004 Burnside Avenue, St. Joseph, Missouri 64505 ("Burnside Property")

      Pursuant to Bankr. W.D. Mo. Local Rule 4070-1.B, IFB hereby requests proof of insurance against physical damage and loss for the Vehicle, Emma Property and Burnside Property.  Specifically, Debtors shall provide to IFB within three business days from the date of this letter proof of insurance, which shall include a certificate of insurance, binder, or other document from the carrier stating amounts, types and period of coverage, and notation of any secured party as loss payee.  To the extent that insurance is already in place on either the Vehicle, Emma Property or Burnside Property, IFB should be noted as the loss payee on the insurance policy.

      **Pursuant to Bankr. W.D. Mo. Local Rule 4070-1.B, failure to provide proof of insurance presumes no insurance is in effect.  Moreover, to the extent that the Vehicle is currently uninsured, IFB specifically directs Debtors' attention to the Western District of**

HB: 4859-8282-6272.1

**HUSCH BLACKWELL**

**Missouri Local Bankruptcy Rule 4070-1.D which provides that the Debtor is enjoined from using the vehicle so long as it is uninsured.**

Sincerely,

Michael D. Fielding

cc: Glenn Erickson (*via email*)

HB: 4859-8282-6272.1