## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THOMASEN R. INGERSOLL and | ) | Bankruptcy Case No. |
| KELLI A. INGERSOLL | ) | 21-50191 |
| | ) | |
| Debtors. | ) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

COME NOW Independent Farmers Bank ("IFB"), by and through its counsel of record,

and moves this Court for an Order terminating the automatic stay to permit IFB to foreclose its

lien on the Collateral as set forth below.  IFB also requests that, in the event that stay relief is

granted, this Court waive the 14-day stay requirement pursuant to Fed. R. Bankr. P. 4001(a)(3).

In support of this motion, IFB states as follows:

## BACKGROUND

1.     IFB is a secured creditor of Debtors Thomasen R. Ingersoll and Kelli A. Ingersoll

("Debtors").

2.     IFB  has a perfected security interest in a 2013 Jeep with VIN

1C4RJFAG0DC548622 ("Vehicle") which is currently in the possession of the Debtors, referred

to hereinafter as the "Collateral".

3.     IFB previously timely filed a proof of claim for the Collateral which included

copies of its underlying loan documents and lien in the Collateral.  A copy of that filed proof of

claim (including the underlying loan documents) is included herewith as Exhibit 1.

4.     The amounts owed under the loan at the time of the bankruptcy filing was as

follows:

Vehicle – $12,35956 (Exhibit 1, Proof of Claim No. 8)

HB 4872-7554-2843
HB: 4872-7554-2843.1

5.      To date, the Debtors have not liquidated any of the Collateral which secures IFB's lien.  Rather, the Debtors remain in possession of the Collateral.

6.      On May 10, 2022, this Court entered its *Order Confirming Chapter 13 Plan as Filed or Amended on or about 3/17/22* ("Confirmation Order") which confirmed the Debtors' amended Chapter 13 plan which had been filed on March 17, 2022 (Doc. No. 109).

7.      The Debtors' amended Chapter 13 Plan recognizes IFB's secured claim in the Collateral.  *See* Doc. No. 109, Part 3.2.

8.      On June 24, 2022 the Notice Allowing Chapter 13 Claims as filed, or Disallowed as Not Filed, was filed with the Court (Doc. No. 137).   That document provided that the claim in the Collateral was to be paid to IFB at 100% with the monthly payment being $290.97 per month until such time as the claim was paid in full.

9.      The Debtors have failed to make payments as required by the loan documents. The last full payment was made in June, 2022.  The Debtors have made no payment on the Collateral since that time and are therefore in default.

## **ARGUMENTS AND AUTHORITIES**

10.      IFB respectfully requests that the automatic stay be lifted to allow IFB to foreclose its lien on the Collateral and that it be permitted to exercise any and all rights and pursue any and all remedies in connection with same.

11.      Section 362 of the Bankruptcy Code provides in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest

11 U.S.C. § 362(d)(1).

12.     Cause exists under 11 U.S.C. § 362(d)(1) for stay relief because Debtors' failure to make timely payments on the Collateral pursuant to the loan documents and the confirmed Plan.  As such, this Court should grant relief from the automatic stay.

### Request for Relief from Rule 4001(a)(3)

13.     In the event that this Court grants stay relief, IFB respectfully requests that the Court waive the 14-day stay of Fed. Rule. Bankr. P. 4001(a)(3) with respect to any order granting stay relief to IFB.

### REQUEST FOR RELIEF

WHEREFORE, IFB respectfully requests that this Court: (1) grant this Motion; (2) render an Order terminating the automatic stay in favor of IFB and permit IFB to foreclose its lien on the Collateral and exercise any and all rights and remedies at law or in equity to which it may be entitled as set forth herein; (3) waive the 14-day stay requirement pursuant to Fed. R. Bankr. P. 4001(a)(3); and (4) grant IFB such other and further relief at law or in equity to which IFB may be entitled.

Dated: October 26, 2022

Respectfully submitted,

HUSCH BLACKWELL LLP

By:/s/ Michael D. Fielding
Michael D. Fielding, MO Bar #53124
4801 Main Street, Suite 1000
Kansas City, MO  64112
Telephone:     816-983-8000
Facsimile:     816-983-8080
michael.fielding@huschblackwell.com

HB 4872-7554-2843
HB: 4872-7554-2843.1

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2022 , the *Motion for Relief from Automatic Stay* was filed electronically using CM/ECF and a true and correct copy of the above and foregoing was served as follows:

___X___ Upon filing, the CM/ECF system sent notification to Debtor(s) counsel and all parties participating in the CM/ECF system in this matter as follows:

- **Ryan A. Blay**   bankruptcy@wagonergroup.com, blay@wagonergroup.com;bankruptcy@wagonergroup.com;blayrr52985@notify.bestcase.com;wmlecf@gmail.com
- **Richard Fink**   ecfincdocs@WDMO13.com

___X___ To the Office of the United States Trustee via e-mail at ustpregion13.kc.ecf@usdoj.gov.

_____ Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as set forth within the matrix on file with the Clerk.

___X___ Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as follows:

Capital one Auto Finance, a division of Capital One
N.A., c/o AIS Portfolio Services, LP
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK  73118

Thomasen R. Ingersoll and Kelli A. Ingersoll
487 East Emma Street
Osborn, MO 64474

By:*/s/ Michael D. Fielding*_____
Michael D. Fielding, MO Bar #53124

HB 4872-7554-2843
HB: 4872-7554-2843.1

EXHIBIT 1

**Fill in this information to identify the case:**

Debtor 1 _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number _____

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

_____
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor  _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| _____<br>Name | _____<br>Name |
| _____<br>Number        Street | _____<br>Number        Street |
| _____<br>City            State            ZIP Code | _____<br>City            State            ZIP Code |
| Contact phone  _____ | Contact phone  816-449-2182 |
| Contact email  _____ | Contact email  jill@farmbank.net |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☐ Yes.  Claim number on court claims registry (if known) _____      Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes.  Who made the earlier filing? _____

4811-6813-1571

Official Form 410                              **Proof of Claim**                              page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
| --- | --- |

**6. Do you have any number you use to identify the debtor?**

❑ No

❑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____. **Does this amount include interest or other charges?**

❑ No

❑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

❑ No

❑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

❑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

❑ Motor vehicle

❑ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $_____ = Scheduled Value

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

❑ Fixed

❑ Variable

**10. Is this claim based on a lease?**

❑ No

❑ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

❑ No

❑ Yes. Identify the property: _____

4811-6813-1571

Official Form 410 **Proof of Claim** page 2

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No<br><br>☐ Yes. *Check one:* | **Amount entitled to priority** |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

| **Part 3:** | **Sign Below** |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____
MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | _____ |
|---|---|
| | First name            Middle name            Last name |
| Title | _____ |
| Company | _____ |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | _____ |
| | Number        Street |
| | _____ |
| | City                                State        ZIP Code |
| Contact phone | _____  Email  _____ |

4811-6813-1571

## SUMMARY OF EXHIBITS

The following exhibits in reference to the Proof of Claim filed on behalf of Independent

Farmers Bank are available at the law firm of Husch Blackwell LLP, 4801 Main Street, Suite

1000, Kansas City, Missouri  64112, upon request:

**Exhibit A**    Summary of Proof of Claim, filed with the Proof of Claim

**Exhibit B**    Promissory Note, Security Agreement and Notice of Lien

Respectfully submitted,

HUSCH BLACKWELL LLP

By:    */s/ Michael D. Fielding*
         Michael D. Fielding, MBE #53124
         4801 Main Street, Suite 1000
         Kansas City, MO  64112
         Office: (816) 983-8000
         Facsimile:  (816) 983-8080
         michael.fielding@huschblackwell.com

         ATTORNEYS FOR INDEPENDENT
         FARMERS BANK

540261-4 (6093)
4833-0819-3521

## EXHIBIT "A"

### SUMMARY OF PROOF OF CLAIM

On or about June 29, 2017, Thomas R. Ingersoll and Kelli A. Ingersoll (the "Debtors") executed a Promissory Note and Security Agreement in favor of Independent Farmers Bank ("IFB") in the original principal amount of $15,542.21 (the "Note").  A copy of the Note is attached hereto as a part of Exhibit "B" and incorporated by reference herein.

In order to secure payment and performance of the Note, the Debtors pledged certain collateral to IFB including, without limitation, a 2013 Jeep Grand Cherokee, VIN: 1CARJFAG0DC548622 (the "Collateral").  A copy of the Notice of Lien evidencing the claim of IFB in the collateral is attached hereto as a part of "Exhibit B" and incorporated herein by reference.

### SECURED CLAIM

IFB hereby demands payment of its secured claim which as of July 7, 2021, was in the total amount of $12,359.56 consisting of:  principal of $8,677.43; plus interest in the amount of $3,097.90; plus late fees in the amount of $584.23; plus all other costs, attorney's fees, expenses, charges and other amounts due pursuant to the loan documents between the Debtors and IFB.

### RESERVATION OF RIGHTS

IFB hereby reserves the right to alter, amend, supplement, modify and/or withdraw this Proof of Claim at any and all times.

The submission of this Proof of Claim is subject to, not a waiver or release of, and IFB hereby reserves:

1. Any lack of venue or jurisdiction by this Court over this case or any adversary action, contested matter, or other proceeding ("Matter") in this case;
2. Any right to a jury trial in any Matter;
3. Any right to *de novo* review of any non-core Matter;

540261-4 (#6093)
4833-0819-3521

4. Rights to have an Article III court enter final orders on Matters to full extent provided in <u>Stern v. Marshall</u>;
5. Any right to contest and deny any and all claims, if any, asserted against IFB;
6. Any right to withdrawal of the reference of this case or any matter; and
7. Any other rights, claims, actions, defenses and setoff or recoupment.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this ___27th___ of ___July___, 2021, the Proof of Claim (regarding Note #9063) was filed electronically using CM/ECF and a true and correct copy of the above and foregoing was served as follows:

___X___ Upon filing, the CM/ECF system sent notification to Debtor(s) counsel and all parties participating in the CM/ECF system in this matter as follows:

- **Ryan A. Blay**    bankruptcy@wagonergroup.com, blay@wagonergroup.com;bankruptcy@wagonergroup.com;blayrr52985@notify.bestcase.com;wmlecf@gmail.com

- **Richard Fink**    ecfincdocs@WDMO13.com

_____ Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as set forth within the matrix on file with the Clerk.

_____ Via U.S. Mail, first class, postage prepaid and properly addressed to all parties of interest as follows:  None

___X___ To the Office of the United States Trustee via e-mail at ustpregion13.kc.ecf@usdoj.gov.

*/s/ Michael D. Fielding*_____

540261-4 (#6093)
4833-0819-3521

INDEPENDENT FARMERS BANK/INGERSOLL
ITEMIZATION OF INTEREST, FEES, EXPENSES OR OTHER CHARGES

| | |
|---|---|
| Principal: | $ 8,677.43 |
| Interest: | $ 3,097.90 |
| Late Charges: | $    584.23 |
| TOTAL: | $12,359.56 |

540261-4 (#6093)
4833-0819-3521

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| ■■■■6093 | Thomas R Ingersoll | | 06/29/17 | GLE |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $15,542.21 | Not Applicable | 8.500% | 06/23/21 | Consumer |
| | | Creditor Use Only | | |

## PROMISSORY NOTE, SECURITY AGREEMENT AND TRUTH-IN-LENDING DISCLOSURES
### (Consumer - Closed End)

**DATE AND PARTIES.** The date of this Promissory Note, Security Agreement and Truth-In-Lending Disclosures (Loan Agreement) is June 29, 2017. The parties and their addresses are:

**LENDER:**
INDEPENDENT FARMERS BANK
201 W Main
PO Box 128
Maysville, MO 64469
Telephone: (816) 449-2182

**BORROWER:**
THOMAS R INGERSOLL
487 East Emma Street
Osborn, MO 64474

KELLI A INGERSOLL
487 East Emma Street
Osborn, MO 64474

The pronouns "I," "me," and "my" refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan. Loan Documents refer to all the documents executed as a part of or in connection with the Loan. Property means any property, real, personal or intangible, that secures my performance of the obligations of this Loan Agreement. Rates and rate change limitations are expressed as annualized percentages. All dollar amounts will be payable in lawful money of the United States of America.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of my credit as a yearly rate. | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid when I have made all scheduled payments. |
| 8.627% | $2,858.05 | $15,507.21 | $18,365.26 |

**Payment Schedule.** My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 47 | $382.61 | Monthly beginning July 23, 2017 |
| 1 | $382.59 | June 23, 2021 |

**Security.** I am giving a security interest in:

Motor Vehicle (Non-Residence)

Collateral securing other loans with you may also secure this loan.

**Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. However, this charge will not be greater than $50.00.

**Prepayment.** If I pay off early, I will not have to pay a penalty.

**Assumption.** Someone buying the Property securing the obligation cannot assume the remainder of the obligation on the original terms.

**Contract Documents.** I will see my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**1. REFINANCING.** This Loan Agreement will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| November 16, 2016 | # ■■■6631 | $14,337.81 |
| February 2, 2017 | # ■■■5766 | $2,000.00 |

The remaining balance of all notes listed in the table above is $14,753.96.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order the principal sum of **$15,542.21 (Principal)** plus interest at the rate of **8.500 percent (Interest Rate)** from June 29, 2017 on the unpaid Principal balance until this Loan Agreement matures or this obligation is accelerated.

After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Loan Agreement at the Interest Rate in effect from time to time, until paid in full. Any amount assessed or collected as interest under the terms of this Loan Agreement will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me. Interest accrues using an Actual/365 days counting method.

**3. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Loan Agreement before the scheduled maturity date.
Loan Origination. A(n) Loan Origination fee of $35.00 payable from the loan proceeds.

**4. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Loan Agreement.

A. **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. However, this charge will not be greater than $50.00. I will pay this late charge promptly but only once for each late payment.

**5. PAYMENT.** I agree to pay this Loan Agreement in 48 payments. I will make 47 payments of $382.61 beginning on July 23, 2017, and on the 23rd day of each month thereafter. A single, final payment of the entire unpaid balance of Principal and interest will be due June 23, 2021.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Loan Agreement will be applied first to interest that is due, then to principal that is due, and finally to any charges that I owe other than principal and interest. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**6. PREPAYMENT.** I may prepay this Loan Agreement in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**7. LOAN PURPOSE.** The purpose of this Loan is for personal expense and payoff ████5631 & ████6766.

**8. SECURITY.** The Loan is secured by Property described in the SECURITY AGREEMENT section of this Loan Agreement and by the following, previously executed, security instruments or agreements: dated 11/16/2016 (loan #████5631).

**9. SECURITY AGREEMENT.**

    **A. Secured Debts.** This Security Agreement will secure the following debts (Secured Debts), together with all extensions, renewals, refinancings, modifications and replacements of these debts:

        (1) Sums Advanced under the terms of this Loan Agreement. All sums advanced and expenses incurred by you under the terms of this Loan Agreement.

        (2) All Debts. All present and future debts of all Borrowers owing to you, even if this Security Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Agreement. Nothing in this Security Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

        This Security Agreement will not secure any debt which is also secured by real property or for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. In addition, this Security Agreement will not secure any other debt if, with respect to such other debt, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

    **B. Limitations on Cross-collateralization.** The cross-collateralization clause on any existing or future loan, but not including this Loan, is void and ineffective as to this Loan, including any extension or refinancing.

The Loan is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

    **C. Security Interest.** To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Security Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Security Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

    **Notice - The Property may also serve as collateral for future advances.**

Property also includes any original evidence of title or ownership whether evidenced by a certificate of title or ownership, a manufacturer's statement of origin or other document when the Property is titled under any federal or state law. I will deliver the title documents and properly execute all title documents as necessary to reflect your security interest.

This Security Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

    **D. Property Description.** The Property subject to this Security Agreement is described as follows:

        (1) Motor Vehicle, Mobile Home, Sport Craft, or Trailer. A Motor Vehicle of Make: JEEP, Year: 2013, Model: GRAND CHEROKEE, VIN: 1C4RJFAG0DC548622.

    **E. Duties Toward Property.**

        (1) Protection of Secured Party's Interest. I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

        (2) Use, Location, and Protection of the Property. I will use the Property only for personal, family, or household purposes. I will not use the Property in violation of any law.

        I will keep the Property in my possession at my address. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

        Until this Security Agreement is terminated, I will not grant a security interest in, or otherwise encumber, any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

        (3) Additional Duties Specific to Motor Vehicles, Sport Craft, or Trailers. So long as I am not in default under this Security Agreement, the Motor Vehicle, Sport Craft, or Trailer portion of the Property will not be restricted to a specific location and may be moved as necessary during ordinary use. However, they may not be taken out of state permanently nor removed from the United States or Canada without your prior written consent.

    **F. Authority To Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, without notice to me, to perform the duties or cause them to be performed.

You are authorized, but are not limited, to: pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property; pay any rents or other charges under any lease affecting the Property; order and pay for the repair, maintenance and preservation of the Property; file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property; place a note on any chattel paper indicating your interest in the Property; take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name; handle any suits or other proceedings involving the Property in my name. If you perform for me, you will use reasonable care.

    **G. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I am located at the address indicated in the DATE AND PARTIES section. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

    **H. Perfection of Security Interest.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all actual costs of terminating your security interest.

**10. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

    **A. Payments.** I fail to make a payment when due.

    **B. Other Events.** Anything else happens that causes you to reasonably believe that the prospect of payment, performance or realization of the Property is significantly impaired.

**11. WAIVERS AND CONSENT.** To the extent not prohibited by law and except for a required notice of right to cure for the failure to make a required payment, if any, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor. In addition, I, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Loan Agreement. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer. You may release, substitute or impair any Property securing this Loan Agreement. You, or any institution participating in this Loan Agreement, may invoke your right of set-off. You may enter into any sales, repurchases or participations of this Loan Agreement to any person in any amounts and I waive notice of such sales, repurchases or participations. I agree that any of us signing this Loan Agreement as a Borrower is authorized to modify the terms of this Loan Agreement or any instrument securing, guarantying or relating to this Loan

Agreement. Except to the extent prohibited by law, I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**12. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Loan Agreement immediately due. This remedy is subject to my limited right to cure certain defaults and to receive notice of such a right under Mo. Rev. Stat. § 408.555.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Loan Agreement, and accrue interest at the highest post-maturity interest rate.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Set-Off.** You may set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by applicable law.

**G. Repossession.** You may require me to gather and make the Property available to you. You may repossess the Property so long as the repossession does not involve a breach of the peace. This remedy is subject to my limited right to cure certain defaults and to receive notice of such a right under Mo. Rev. Stat. § 408.555. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Loan Agreement will be reasonable notice to me under the Missouri Uniform Commercial Code.

**H. Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

**I. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**13. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Loan Agreement or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, not in excess of 15 percent of the amount due and payable, if referred to an attorney who is not your salaried employee, together with any assessed court costs. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan Agreement. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**14. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**15. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or to which I am a party.

**16. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

**A. Property Insurance.** I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Loan Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. You may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. This insurance coverage does not satisfy any liability or property insurance that may be mandated by applicable state or federal law. I acknowledge and agree that you or one of your affiliates may receive commissions on the purchase of this insurance.

I understand that I am free to insure my Property with whatever licensed company, agent or broker I may choose; that I may do so at any time after the date of the Loan; that I have not cancelled existing insurance on my Property if I owned it before the Loan; and that the Loan cannot be denied me simply because I did not purchase my insurance through the lender or seller.

**17. COLLATERAL PROTECTION INSURANCE NOTICE.** Unless I provide you with evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral. This insurance may, but need not, protect my interests. The coverage that you purchase may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by you, but only after providing you with evidence that I have obtained insurance as required by our agreement. If you purchase insurance for the collateral, I will be responsible for the costs of that insurance, including the insurance premiums, interest and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of the insurance I may be able to obtain on my own.

**18. GENERAL PROVISIONS.** If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of the agreement and may not be amended or modified by oral agreement. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007. This Loan Agreement is governed by the laws of Missouri, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**19. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**ITEMIZATION OF AMOUNT FINANCED**

| | |
|---|---|
| **NOTE AMOUNT** | $15,542.21 |
| Amount given to me directly: | |
| (none) | $753.25 |
| Total amount given to me directly | $753.25 |

Amount paid on my account:

| | |
|---|---|
| LOA - Loan Payment/Payoff ▉ | $1,786.03 |
| LOA - Loan Payment/Payoff ▉ | $12,967.93 |
| Total amount paid on my account | $14,753.96 |

Amount paid to Lender     $0.00

Amount paid to others on my behalf*:

Prepaid finance charge amount paid to others on my behalf

| | |
|---|---|
| Independent Farmers Bank | $35.00 |
| Total prepaid finance charge amount paid to others | $35.00 |

LESS: PREPAID FINANCE CHARGE     $35.00

AMOUNT FINANCED     $15,507.21

*Lender may retain or receive portions of these amounts.

---

ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER) AND US (LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

---

20. SIGNATURES. By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement.

BORROWER:

_____ Date 6-29-17
Thomas R Ingersoll

_____ Date 6-29-17
Kelli A Ingersoll

---

Thomas R Ingersoll
Missouri Promissory Note, Security Agreement and Truth-In-Lending Disclosures
MO/4XXBJRHEA00000000001289032062917N     Wolters Kluwer Financial Services ©1996, 2017 Bankers Systems™     Page 4



ORIGINAL MOTOR VEHICLE TITLE RECEIPT



2016144014010DF829000070001

Page 1 of 1

## OWNER INFORMATION

INGERSOLL KELLI A & THOMAS R
487 E EMMA ST
OSBORN, MO 64474

COUNTY: DEKALB

### OWNER(S)

INGERSOLL KELLI A & THOMAS R

TRANSFER ON DEATH

## VEHICLE INFORMATION

| MAKE | YEAR | VEHICLE ID NUMBER | KIND OF VEHICLE | BODY STYLE | ODOMETER | ODOMETER CODE | PURCHASE DATE |
|------|------|-------------------|-----------------|------------|----------|---------------|---------------|
| JEEP | 2013 | 1C4RJFAG0DC548622 | PASSENGER | UTILI | 40587 | ACTUAL MILEAGE | 09/08/2012 |
| BRAND CODE | | | | | | | |

## LIEN HOLDER(S) INFORMATION

INDEPENDENT FARMERS
P.O. BOX 128
MAYSVILLE, MO 64469

LIEN DATE: 11/16/2016
SUBJECT TO FUTURE ADVANCES

## FEE ASSESSMENT INFORMATION

TAX EXEMPTION    01  - TAXES PREVIOUSLY PAID TO MISSOURI

## FEE INFORMATION

| DESCRIPTION - CODE | AMOUNT |
|--------------------|--------|
| TITLING FEE / MOTOR VEHICLE ORIGINAL/NON-NEGOTIABLE/SALVAGE TITLE - 0582 | $8.50 |
| AGENT FEE / AGENT FEE - 0708 | $5.00 |
| NOTICE OF LIEN FEE / NOTICE OF LIEN - $0 - 0094 | $0.00 |
| TOTAL PAID: | $13.50 |

Any false affidavit is a crime under Section 575.050 of Missouri Law.

This is your title application receipt and proof of lien perfection. Please retain for your records.

## SIGNATURE STATEMENT

I certify under penalty of perjury that the facts herein are true to the best of my knowledge.

SIGNATURE:    X SEE SUPPORTING DOCUMENTS

NOTE: The Missouri Department of Revenue may electronically resubmit checks returned for insufficient or uncollected funds. Other restrictions may apply.

## MAIL TITLE TO INFORMATION

INGERSOLL KELLI A & THOMAS R
487 E EMMA ST
OSBORN, MO 64474

## FOR OFFICE USE ONLY

NMVTIS Control ID:
1612151326110001

SCANNED

*Your Opinion Matters! Please tell us if our service met your expectations at www.dor.mo.gov.*

MAYSVILLE
Office: 014010
Operator - Time: DF8290 - 12/15/2016 1:41:28 PM
Workstation: 3
Shipment: 144

Missouri Department of Revenue
PO Box 100
Jefferson City, MO 65105-0100
(573) 526-3669
www.dor.mo.gov



2016144014010DF82900007

1500563!